518 A.2d 282

COMMONWEALTH of Pennsylvania

v.

Kim MASON, Appellant.

COMMONWEALTH of Pennsylvania

v.

Darryl LAMAR, Appellant.

COMMONWEALTH of Pennsylvania

v.

Eugene MILLER, Appellant.

COMMONWEALTH of Pennsylvania

v.

Darryl FORD, Appellant.

COMMONWEALTH of Pennsylvania

v.

Gerald JONES, Appellant.

COMMONWEALTH of Pennsylvania

v.

Mack SMITH, Appellant.

Superior Court of Pennsylvania.

Argued and Submitted May 24, 1986.

Filed Nov. 5, 1986.

Reconsideration Denied Dec. 2, 1986.

564

Steven Dickstein, Philadelphia, for Kim Mason.

Thomas L. McGill, Jr., Philadelphia, for Darryl Lamar.

Francis X. Nolan, Philadelphia, for Eugene Miller.

Christopher G. Bokas, Philadelphia, for Darryl Ford.

Joseph P. Zawrotny, Philadelphia, for Gerald Jones.

Vincent M. Lorusso, Philadelphia, for Mack Smith.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for the Com.

Garold E. Tennis, Assistant District Attorney, Philadelphia, for the Com. in No. 1158.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

DEL SOLE, Judge:

The procedural history of this case reveals that on June 13, 1979, the Philadelphia County Investigating Grand Jury of November 29, 1978 issued indictments charging each of

the six Appellants with the following criminal offenses arising from two separate firebombing incidents of Philadelphia residences on December 3, 1977: three separate counts of murder;[1] two separate counts of arson, endangering persons and endangering property;[2] causing a catastrophe and risking a catastrophe;[3] and criminal conspiracy.[4]

Pursuant to the Investigating Grand Jury Act (the Act),[5] a probable cause hearing was scheduled but thereafter continued pending disposition of Appellants' motions to quash which challenged the constitutionality of the Act for failure to provide a preliminary hearing following indictment. The motions were subsequently denied. However, since the Legislature had amended the Act to provide for a preliminary hearing after indictment, such a hearing was conducted at the conclusion of which Appellants were held for trial on all charges. Appellants also filed motions to dismiss based on alleged prosecutorial misconduct during the grand jury proceedings. These motions were denied.

Following the denial after hearing of Appellants' suppression motions, a jury trial commenced on June 12, 1980. On June 27, 1980, guilty verdicts were returned on all counts against all Appellants with the exception of Appellant Smith. Appellants Jones, Mason and Ford were found guilty of first degree murder whereas Appellants Lamar and Miller were convicted of second degree murder. A mistrial was declared as to Appellant Smith because the jury was deadlocked. On retrial however, Smith too was found guilty on all counts and specifically second degree murder.

1. 18 Pa.C.S.A. § 2502.
2. 18 Pa.C.S.A. § 3301.
3. 18 Pa.C.S.A. § 3302.
4. 18 Pa.C.S.A. § 903.
5. Act of November 22, 1978, P.L. 1148, 19 P.S. § 265 *et seq.,* "repealed and reenacted into the Pennsylvania Statutes by the Act of October 5, 1980, P.L. 693, No. 142, § 216, 42 P.S. § 20010. *et seq.,* the 'JARA Continuation Act of 1980'. The effect of this Act was to transfer 19 P.S. §§ 265–276 to 42 Pa.C.S. § 4541–4553." *Commonwealth v. Taraschi,* 327 Pa.Super. 179, 193–194, 475 A.2d 744 (1984).

Post-trial motions were filed and denied. Each Appellant was sentenced to consecutive terms of life imprisonment for the three murder convictions and consecutive sentences of imprisonment imposed for the other convictions. Timely appeals from the judgments of sentence were filed, consolidated, and are presently before this Court for review.[6]

A summary of the relevant facts indicates that on the evening of December 3, 1977, members of the "Taylor Street" gang prepared to retaliate for the firebombing of a members home by the rival "Pierce Street" gang. Appellant Ford reportedly phoned the home of Fitzgerald Lawrence telling him to purchase some gasoline. Present at the Lawrence home, and on an extension phone was Alex Harper. Ford told Harper to obtain bottles sufficient for firebombs. Shortly thereafter, Ford and other members of the Taylor Street gang arrived at the Lawrence home. It was alleged that the members included Appellants Smith, Lamar, Miller, and Jones. Ford gave Lawrence keys to a car in order to obtain gasoline while Lawrence's brother Tyrone along with Harper and another individual, Keith Woodward, prepared for the arrival of the gasoline by obtaining bottles and tearing rags. Lawrence returned and the four filled six to ten "Colt 45" bottles with gas and placed rags into the bottlenecks. Ford reportedly then directed Lawrence to drive Lamar and an unidentified male to 2309 Mountain Street. Two other cars apparently went

6. One issue raised by all Appellants is that the indictments issued by the Investigating Grand Jury should have been quashed based on prosecutorial misconduct in the grand jury proceedings. In support, Appellants cited examples from the grand jury transcripts which alleged a pattern of misconduct by the grand jury prosecutor. On review of the record, it was determined that this Court was without the benefit of the original transcripts of the grand jury proceedings nor had there been any opinion filed by the trial court stating its reasons for the denial of Appellants' motions to dismiss or its dismissal of the argument on post-verdict motions. Therefore, we remanded the case to the trial court for the filing of an opinion on the issue of prosecutorial misconduct in the grand jury proceedings. In addition, the court was directed to seal and file with the prothonotary of this court the original transcripts of the grand jury proceedings. *Commonwealth v. Garwood*, No. 1287 Philadelphia 1981 (filed March 8, 1985). As the trial court has complied with this Court's mandate, we are now able to address the merits of Appellant's arguments.

to a Gadson residence at 1330 Bancroft Street. Both homes were firebombed. At the Bancroft Street address, a woman and two children died in the fire. The Mountain Street residence failed to ignite as the bottle failed to break.

After grand jury indictment, Harper, Woodward, and both Lawrence brothers agreed to testify on behalf of the Commonwealth in return for favorable sentencing consideration on related crimes.

At trial, Fitzgerald Lawrence testified concerning the events of December 3, 1977 as well as to a conversation with Appellant Mason while both were incarcerated for unrelated crimes after the firebombings. Lawrence testified that Mason had admitted his participation in the firebombings.

■ Initially it is noted that:

[o]ne must either file post-verdict motions within ten days under Pa.R.Crim.P. 1123(a) or seek permission to file post-verdict motions *nunc pro tunc* under the Post Conviction Hearing Act as required by Pa.R.Crim.P. 1123(f). As we recently reiterated in *Commonwealth v. Jackson,* 336 Pa.Super. 609, 623, 486 A.2d 431, 439 (1984), "[o]ur Court will review only those issues which have been properly preserved for review, i.e., errors which have been raised specifically in written post-trial motions pursuant to Pa.R.Crim.P. 1123(a)."

*Commonwealth v. Rosko,* 353 Pa.Super. 307, 310, 509 A.2d 1289, 1290 (1986).

Additionally, "[w]e have not considered oral presentation adequate to preserve the issue since *Commonwealth v. Blair,* [460 Pa. 31, 331 A.2d 213 (1975) ]".... *Commonwealth v. Gravely,* 486 Pa. 194, 198 n. 1, 404 A.2d 1296 n. 1 (1979). "The only exception to this strict enforcement of the terms of Rule 1123(a) is the situation where an appellant, after failing to file proper motions, submits a brief raising alleged error and the post-verdict court, without objection, disposes of the appeal on the basis of the merits of the issues belatedly raised." *Commonwealth v. Bil-*

*hardt,* 269 Pa.Super. 95, 98, 409 A.2d 81, 82 (1979). This exception does not exist for cases in which post-verdict motions were filed after September 4, 1979. *Id.,* 269 Pa.Superior Ct. at 95 n. 1, 409 A.2d at 82 n. 1.

Our review of the record fails to locate any written post-trial motions on behalf of Appellant Ford. He does not qualify for an exception to this rule and we therefore conclude that the issues which he attempts to raise at this time are not preserved for review and the judgment of sentence as to Appellant Ford is affirmed.

■ Appellants first contend the trial court erred in excluding any reference to the psychiatric history of Fitzgerald Lawrence, either through cross-examination or by independent medical testimony.

[t]he crucial determination that a trial judge must make in ruling on the admissibility of evidence of a witness's mental instability is whether it is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him.* The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime. *See Commonwealth v. Repyneck,* 181 Pa.Super. 630, 124 A.2d 693, allocatur refused, 181 Pa.Super. XXIV (1956).

[*] Pennsylvania's position on the introduction of evidence of mental imbalance to discredit a witness who is admittedly competent to testify was first stated in dicta in *Commonwealth v. Kosh,* 305 Pa. 146, 157 A. 479 (1931): "Mere mental derangement on some matter not connected with the subject of the litigation and not affecting the testimonial ability of the witness is not even to be considered by the jury in determining the credibility of the witness." *Id.,* 305 Pa. at 156, 157 A. 482–483.

This statement was later reaffirmed as the general rule in *Commonwealth v. Towber,* 190 Pa.Super. 93, 152 A.2d 917 (1959). Despite the recognition of a general rule of inadmissibility where the mental unsoundness is unrelated to the matter at hand, this Court in *Towber* went on to find reversible error where evidence of a psychopathic mental disorder requiring commitment 7 months prior to a burglary trial, offered to impeach an important witness, was refused.

*Commonwealth v. Dudley*, 353 Pa.Super. 615, 620, 510 A.2d 1235, 1238 (1986) quoting *Commonwealth v. Butler*, 232 Pa.Super. 283, 287–288, 331 A.2d 678, 680 (1974).

Appellants argue that Lawrence's psychological problems were of such severity that the accuracy of his recollection of the events of December 3, 1977 is questionable. To this end, Appellants' counsel attempted to introduce into evidence psychiatric records from the Philadelphia State hospital where Lawrence had been committed prior to trial. The court reviewed the psychiatric report on the record and noted that Lawrence was admitted in September 1978, discharged in November of that year and diagnosed as "schizophrenia, paranoid type with features of depression, mild mental retardation." (Trial Transcript at 2027). The court further noted that the report indicated Lawrence had been taking Thorazine prior to this commitment and that this medication should continue upon his discharge. (Trial Transcript at 2207–2208). During his commitment, there is also an indication that Lawrence denied knowing his mother, who lived with him, heard voices, and was said to have poor remote and immediate recall. (Trial Transcript at 1031, 1035). The court determined the records to be inadmissible as there was not enough in them to show that Lawrence could not remember or testify as to the events of December 3, 1977. We disagree.

Because the information contained in the psychological reports "shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime" *Commonwealth v. Butler*, 232 Pa.Super. at 287–288, 331 A.2d at 680, the court erred in its determination that the psychological reports were inadmissible.

■ Impeachment of Lawrence's testimony with evidence of his psychological problems was vital to the defense of Appellants Lamar and Smith as our review of the record indicates that Lawrence was the *only* individual to inculpate

them.[7] See *Commonwealth v. Towber*, 190 Pa.Super. 93, 152 A.2d 917 (1959) (finding reversible error where evidence of mental disorder offered to impeach important witness was refused). However, we are equally convinced that impeachment of Lawrence's testimony with evidence of his psychological problems was not vital to the remaining Appellants defense. Appellants Mason, Jones, and Miller were implicated in the events of December 3, 1977 by the testimony of Harper and Woodward. Harper testified that Ford phoned and ordered him to obtain bottles for firebombs, (Trial Transcript at 874) and that "... Kim, he came in sometime ..." speaking of Mason. (Trial Transcript at 880). Harper saw no one else specifically, but only knew that others were present. (Trial Transcript at 881). Woodward though testified that he saw Mason on the third floor of the Lawrence home, (Trial Transcript at 1460) and while carrying bombs downstairs he saw Miller and Garwood at the door. (Trial Transcript at 1468). Neither Harper nor Woodward testified to seeing Lamar or Smith.

We therefore vacate the judgments of sentence with respect to Appellants Lamar and Smith.[8]

The remaining Appellants, Jones, Mason and Miller next argue that the court erred in denying their motions to quash the indictments on the basis of alleged prosecutorial misconduct before the Grand Jury. The alleged misconduct is said to encompass: a) the eliciting of crimes totally unrelated to the matter under investigation, b) exploitation of the juror's fears concerning the well being of witnesses and their families, and c) generalized character assassination of members of the gang simply by virtue of their membership.

This Court has recently noted that when presented with a motion to quash a grand jury indictment on the basis of alleged prosecutorial misconduct:

7. Lawrence testified at the trial following which Appellants were convicted and again at Smith's retrial.

8. It is unnecessary to address the remaining issues raised by Appellants Lamar and Smith due to our disposition of their appeals on the basis of improperly excluded impeachment evidence.

[t]he decision to grant or deny a motion to quash is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion.... A court, moreover, "should not sustain a motion to quash ... except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights."

*Commonwealth v. Bradfield,* 352 Pa.Super. 466, 477, 508 A.2d 568, 573 (1986). We further indicated that when comments of counsel are not so egregious, in view of the totality of the evidence presented to a grand jury, a court is not required to invalidate a presentment. *Id.*

Having reviewed the transcript, we do not find Appellant's claim completely devoid of merit. However, there was ample credible evidence to support the presentment and the court did not err in denying the motions to quash.[9]

■ Appellants Jones and Mason argue that their right to a prompt trial pursuant to Pa.R.Crim.P. 1100 has been violated. We disagree.

The indictments in this matter were returned on June 13, 1979 and for purposes of Rule 1100, trial was required to commence no later than 180 days thereafter.[10] The Appellants filed a variety of motions to quash the indictments and because the motions remained unresolved for several

---

**9.** Appellant Jones, in his brief on appeal, has argued that the trial court's denial of his motion to quash the indictment on the ground of pre-arrest delay was error. Appellant has failed to preserve the issue by filing a written post-trial motion on this alleged error and it is not considered. See, *Commonwealth v. Gravely,* 486 Pa. 194, 198 n. 1, 404 A.2d 1296, 1296 n. 1 (1979); *Commonwealth v. Rosko,* 353 Pa.Super. 307, 310, 509 A.2d 1289, 1290 (1986); *Commonwealth v. Bilhardt,* 269 Pa.Super. 95, 98, 409 A.2d 81, 82 (1979).

**10.** In *Commonwealth v. Mallon,* 356 Pa.Super. 493, 515 A.2d 1 (1986) this court held "in cases originating with investigating grand jury presentments which are referred to the prosecutor, the Rule 1100 period begins to run only after the prosecutor, reaches the decision to prosecute the defendant, publicly accusing him through the filing of a criminal complaint." *Id.* In the present case, the Investigating Grand Jury issued indictments, a practice the Appellants have not challenged on appeal and which was permitted by the Act of November 22, 1978, *See supra.,* n. 5.

months the Commonwealth filed petitions for extensions of time which were granted. Appellants contend the record fails to demonstrate why the delay, which they termed judicial delay, could not have been avoided as required by the Court in *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976). The flaw in Appellants' argument is not in their understanding of *Mayfield* but rather in their characterization of the delay as judicial. In *Commonwealth v. Bond*, 350 Pa.Super. 341, 504 A.2d 869 (1986), this court en banc considered the effect of an appellants pre-trial motion to dismiss a complaint based on a constitutional challenge to the statute under which she had been charged. For purposes of Rule 1100, then President Judge Spaeth wrote in a concurring opinion that "the general requirement of Rule 1100, that the accused must be tried within 180 days, has certain exceptions, stated in the Rule itself and developed in the case law. Thus in calculating the 180–day period, one does not include a period during which the accused was 'unavailable', *Commonwealth v. Cohen*, 481 Pa. 349, 392 A.2d 1327 (1978), ...." *Commonwealth v. Bond*, 350 Pa.Super. at 358, 504 A.2d at 878. Furthermore, it was stated that:

> [t]he critical point, as I see it, is that in instituting her constitutional challenge, appellant initiated foreseeable delay for which the Commonwealth was not responsible. The period extending from the date of appellant's motion to the date of the trial court's order denying the motion should be excluded from the 180–day period. To permit the period to run while the court deliberated on the motion would be to permit appellant to wield her right to a speedy trial in an unjust and uncontemplated manner. Id.[11]

---

**11.** In a concurring opinion joined in by Judges Rowley, Beck and Tamilia, Judge Wieand agreed that, "trial could not be commenced until ... the trial court rendered a decision on appellant's pre-trial motions. In the interim, as Judge Spaeth has observed, appellant's pre-trial motion had, in effect, rendered her unavailable for trial." *Commonwealth v. Bond*, 350 Pa.Super. at 364, 504 A.2d at 881. Judge Brosky filed a concurring opinion in which he joined the concurring

We find this reasoning to be dispositive of Appellant's Rule 1100 claim. The delay in commencement of trial was not judicial but rather due to Appellants unavailability, and such periods of unavailability, as already indicated, are excluded from the 180–day Rule 1100 period. The time from July 16, 1979 when Appellants filed motions to quash the indictments until these motions were denied on October 4, 1979 is excludable as Appellants were unavailable. The new Rule 1100 run date became February 27, 1980. However, the record indicates that a motion to quash was filed November 14, 1979 and denied March 12, 1980. In addition, a motion to dismiss was filed February 11, 1980 and denied May 16, 1980. The period between November 14, 1979 and May 16, 1980 is therefore also excludable. The result is that the new Rule 1100 run date became August 28, 1980. Voir dire began June 9, 1980, well within the time period mandated by Rule 1100.[12]

■ Appellants Jones and Miller next aver the trial court abused its discretion in denying motions to sever.[13] Appellants claim prejudice in that the jury was burdened in segregating the evidence as to each defendant and was affected by the evidence of gang involvement, equating gang membership with guilt in this case.

'Questions of consolidation or severance of defendants for trial rest in the discretion of the trial judge and his rulings on such matters will not be disturbed on appeal except for manifest abuse of discretion.' *Commonwealth v. Tolassi*, 258 Pa.Super. 194, 199, 392 A.2d 750, 753 (1978), aff'd, 489 Pa. 41, 413 A.2d 1003 (1980)....
When the crimes charged arise from the same acts or

opinion of Judge Spaeth. *Id.*, 350 Pa.Superior Ct. at 361, 504 A.2d at 880.

12. The comment to Pa.R.Crim.P. 1100 provides in part, "For the purpose of this rule, a trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire...."

13. Appellant Miller's additional assertion that his request for severance should have been granted because he requested a bench trial is unavailing as he specifically requested a trial by jury. (Trial Transcript of 9/9/80 at 770).

series of acts and much of the same evidence is necessary or applicable to all defendants, a joint trial is 'permissible, if not advisable.' *Commonwealth v. Jackson*, 451 Pa. 462, 464, 303 A.2d 924, 925 (1973). . . . Especially where a conspiracy to commit crime is alleged, the defendants should be tried together, 'unless it can be shown that one or more of the defendant's will be actually prejudiced by doing so.' *Commonwealth v. Johnson*, 291 Pa.Super. 566, 582, 436 A.2d 645, 653 (1981).

*Commonwealth v. Granberry*, 346 Pa.Super. 395, 399, 499 A.2d 671, 673 (1985) quoting *Commonwealth v. Hamm*, 325 Pa.Super. 401, 409–10, 473 A.2d 128, 132–133 (1984).

In this case, the crimes charged arose from the same acts and much of the same evidence was applicable to all defendants. Additionally, one of the crimes charged was conspiracy. The record indicates that the jury deliberated over thirty hours. Further, three Appellants received second degree murder convictions, three received first degree murder convictions and with respect to one Appellant, the jury was deadlocked. There is no indication the jury had difficulty segregating the evidence as to each Appellant. The allegations of prejudice are general and our review discloses no manifest abuse of discretion by the trial court in denying the motions to sever.

■ Appellants Jones and Miller argue the trial court abused it's discretion in denying their motions for mistrial based on a statement elicited by counsel for Appellant Ford from Fitzgerald Lawrence, that Ford had ordered him to kill someone, a crime unrelated to the present case. "The decision to declare a mistrial was within the sound discretion of the trial court and, absent a flagrant abuse of that discretion, the decision will not be reversed." *Commonwealth v. Thomas*, 346 Pa.Super. 11, 17, 498 A.2d 1345, 1348 (1985). We fail to see how the statement could have prejudiced anyone other than Appellant Ford and had we not already found that Ford has failed to preserve any issue for appeal we note he has not even raised this contention in

his brief. There was no abuse of discretion by the trial court in denying Appellants motions for mistrial.

■ It is next asserted that the trial court erred in limiting the number of peremptory challenges to seven during voir dire, establishing a policy of majority rule when counsel could not establish uniformity in the exercise of challenges, and in refusing to ask relevant questions.

> The scope of *voir dire* examination rests with the sound discretion of the trial judge. *Commonwealth v. Drew,* 500 Pa. 585, 590, 459 A.2d 318 (1983). Absent a gross abuse of discretion, a reviewing court will not reverse the trial court's ruling. *Commonwealth v. Mayo,* 272 Pa.Super. 115, 120, 414 A.2d 696 (1979). The lower court did not grossly abuse its discretion by disallowing defendant's proposed questions.

*Commonwealth v. Lark,* 350 Pa.Super. 558, 565–566, 504 A.2d 1291, 1295 (1986).

Further:

> [i]t had been provided by statute at the time of the instant trial that in noncapital felony cases the Commonwealth and the accused were each entitled to seven peremtory challenges. Act of October 7, 1976, P.L. 1089, No. 217, 19 P.S. § 811(a) (repealed). However, in trials involving more than one defendant, the defendants were entitled only to the maximum number any one of them would have received if tried separately.

*Commonwealth v. Hamm,* 325 Pa.Super. at 419, 473 A.2d at 137.[14] There was no trial court error.

---

**14.** Present practice is controlled by Pa.R.Crim.P. 1126 which provides in pertinent part:

(b) Trials Involving Joint Defendants:

(1) In trials involving joint defendants, the defendants shall divide equally among them that number of peremptory challenges that the defendant charged with the highest grade of offense would have received if tried separately, provided, however, that each defendant shall be entitled to at least two (2) peremptory challenges. Where such division of peremptory challenges among joint defendants results in a fraction of a peremptory challenge, each defendant shall be entitled to the next highest number of such challenges.

■ Appellants Jones and Miller contend the court erred in denying motions to suppress statements made to the police following arrest. Having reviewed the record, we find it contains no motion to suppress. Additionally we are perplexed by appellant Jones' contention in this regard as he concedes the statement he made was not introduced at trial. "[T]his Court will not consider claims of error arising from the failure to suppress evidence not introduced at trial, unless it is alleged that there was some resulting infringement upon the defendant's constitutional rights." *Commonwealth v. Horner*, 492 Pa. 536, 539, 424 A.2d 1320, 1322 (1981). "Appellant's complaint is thus merely an allegation that Appellant' counsel would have handled the case differently had he known the Commonwealth would not introduce Appellant's [statement]...." *Id.*

Appellant Miller makes the argument that his statement should have been suppressed as he was intoxicated at the time of arrest and when he gave his statement, rendering the statement involuntary.

In reviewing the ruling of a suppression court, the reviewing court's initial task is to determine whether the factual findings are supported by the record. In making this determination, if the suppression court held for the prosecution, the reviewing court must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. Monarch*, 510 Pa. 138, 144, 507 A.2d 74, 78 (1986).

The suppression court found:

41. Upon his arrival at the Police Administration Building, Homicide Unit at 12:55 a.m., Miller appeared alert and responsive. He gave no signs of illness, nor of being

(2) In trials involving joint defendants, it shall be within the discretion of the trial judge to increase the number of peremptory challenges to which each defendant is entitled up to the number of peremptory challenges that each defendant would have received if tried alone.

under the influence of drugs or alcohol. There was no slurred speech and no indication of alcohol on his breath. (Suppression Court Opinion at 9).

Our review of Detective Bennett's testimony at the suppression hearing (Transcript of Suppression Hearing of June 3, 1980, at 253–289), indicates Appellant Miller appeared alert and responsive (*Id.* at 259), did not appear drunk (*Id.* at 261) did not stagger when he walked (*Id.* at 262), have slurred speech or the odor of alcohol on his breath. (*Id.*).

Although there was testimony that the Appellant vomited, Detective Bennett indicated this occurred after Appellant was shown the arrest papers charging him with murder and indicated he did not want to hear about the victims as it upset him. (*Id.* at 263–264).

Appellant testified that he had six or seven gin and grapefruit juice drinks and some beer (Transcript of Suppression Hearing of June 5, 1980 at 598) and characterized himself as drunk at the time of arrest. (*Id.*) However in explaining his condition further, he indicated he knew what was going on around him, his mind wasn't foggy, knew who he was talking to and what he was saying (*Id.* at 598–599).

Given our scope of review, as previously indicated, we have no difficulty in determining that the factual finding of the court is supported by the record and there was no error in denying Appellants motion to suppress his statement.

█ Appellants Jones and Mason next allege the court erred in restricting the cross-examination of Keith Woodward and Alex Harper by refusing to permit the introduction of independent evidence to impeach credibility, and to show motive, bias and interest. This argument with respect to the cross-examination of Alex Harper is waived as it does not appear in Appellants post-trial motions. *See Commonwealth v. Gravely*, 486 Pa. 194, 198 n. 1, 404 A.2d 1296, 1296 n. 1 (1979); *Commonwealth v. Rosko*, 353 Pa.Super. 307, 308–09, 509 A.2d 1289, 1290 (1986); *Commonwealth v. Bilhardt*, 269 Pa.Super. 95, 98, 409 A.2d 81, 82 (1979).

"The scope and limits of cross-examination are largely within the discretion of the trial court and its actions pertaining thereto will not be reversed in the absence of a clear abuse of its discretion or error of law." *Commonwealth v. Buehl*, 510 Pa. 363, 388, 508 A.2d 1167, 1179 (1986). Appellants wished to show Woodward's bias through cross-examination on a charge of terroristic threats/retaliation against a witness which had been lodged against him in an unrelated case. Appellant hypothesizes that Woodward was motivated to testify against Appellants because a bench warrant arising from Woodward's failure to appear at a hearing on the terroristic threats charge was lodged against him moments after his preliminary hearing on the charges in the case sub judice. Our review of the record reveals that the jury was well informed of Woodward's motivation for testifying. The jury heard that a) the Commonwealth dropped all murder charges against Woodward in spite of his admitted involvement (Trial Transcript at 1480); b) in place of up to three consecutive life sentences he could have received, Woodward would receive a single sentence of eleven and one-half to twenty-three months in prison following his guilty plea to arson, conspiracy, and manufacturing incendiary devices (Trial Transcript at 1480, 1495–96); c) the Commonwealth agreed not to oppose Woodward's bail petition (Trial Transcript at 1481), and; d) Woodward admitted on cross-examination that he was testifying to save "my own skin" (Trial Transcript at 1498).

▮ Appellants further assert that the court erred in denying a Motion *In Limine* to prohibit the introduction of evidence concerning Appellants gang activities and prior crimes. We disagree. Testimony concerning the criminal homicide is "inextricably interwoven with a history of gang warfare." *Commonwealth v. Johnson*, 496 Pa. 546, 549, 437 A.2d 1175, 1176 (1981). Additionally, since Appellants were "charged with criminal conspiracy, evidence of the gang activity in the present case is highly probative of whether a conspiracy existed." *Commonwealth v. Gwalt-*

*ney,* 497 Pa. 505, 514, 442 A.2d 236, 241 (1982). Accordingly, we find that the trial court did not err in denying Appellant's motion. With our resolution of this claim, it is noted that there are no remaining issues asserted by Appellant Mason and therefore judgment of sentence as to Appellant Mason is affirmed.

Appellants Jones and Miller contend the court erred in instructing the jury in its charge on conspiracy and further in answering a jury question in that the court failed to distinguish in the conspiracy charge among knowledge, presence and mere association, and improperly defined transferred intent. Appellant Miller also contends the court erred when refusing to charge the jury on the special treatment given and self-interest of the two witnesses, Woodward and Lawrence.

"In viewing jury instructions for reversible error, we must read the charge as a whole. Error cannot be predicated on isolated excerpts of the charge; it is the general effect that controls." *Commonwealth v. Sweger,* 351 Pa. Super. 188, 194, 505 A.2d 331, 334 (1986). Further, "[a] trial court is not required to accept requested points for charge verbatim, but is free to use its own form of expression so long as the applicable law is clearly, adequately, and accurately explained to the jury." *Id.*

We have reviewed and find the courts instructions concerning conspiracy to be an accurate reflection of the law. While Appellants are correct that mere presence at the scene of a crime is insufficient to establish the existence of a criminal conspiracy, *Commonwealth v. Gordon* 329 Pa.Super. 42, 52, 477 A.2d 1342, 1347, (1984), it does not necessarily follow that they are entitled to an instruction to that effect. Appellants' position throughout trial was that they were not present at the crime scene at all. The Commonwealth in contrast presented witnesses who testified to the Appellants affirmative involvement in preparing to commit the firebombing.

A trial judge need not include in his instructions to the jury a principle of law that bears no relationship to the

issues in the case, or that is inconsistent with either party's position. Certainly, the Commonwealth's position was that appellant was far more than merely present at the scene.... Appellant's position was that he was not present at all.... Therefore, there was no reasonable basis, in fact, for inclusion of a charge on 'mere presence'.

*Commonwealth v. Keaton*, 276 Pa.Super. 518, 524–525, 419 A.2d 578, 581–582 (1980).

 The court also correctly instructed the jury as to the suspect nature of Woodward's and Lawrence's testimony as follows:

Fitzgerald Lawrence and Keith Woodward have pled guilty to the same crimes with which the defendants are charged.

Experience shows that after being caught in the commission of a crime, a person may falsely blame others because of some corrupt and wicked motive or in the furtherance of his own selfish interest. On the other hand, sometimes such a person may tell the truth about how he and others committed the crime together. In deciding whether or not to believe Alex Harper, Fitzgerald Lawrence, and Keith Woodward, you should be guided by the following principles which apply specifically to their testimony.

*First, the testimony of Alex Harper, Fitzgerald Lawrence and Keith Woodward should be looked upon with disfavor as coming from corrupt and polluted sources.*

Second, you should closely and separately examine the testimony of Alex Harper, Fitzgerald Lawrence and Keith Woodward and accept the testimony of each *only with caution and care.*

(Trial Transcript at 2269–70) (emphasis added).

Based on the foregoing, the judgments of sentence as to Appellants Mason, Miller, Ford and Jones are affirmed. Judgments of sentence as to Appellants Lamar and Smith are vacated and their cases are remanded for new trials. Jurisdiction relinquished.