J-S08043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY O'DONNELL, | |
| Appellant | No. 2514 EDA 2014 |

Appeal from the Judgment Of Sentence July 23, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000536-2013

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:          **FILED JANUARY 23, 2015**

Following a bench trial, the trial court found Timothy O'Donnell guilty of simple assault[1] for striking his daughter in the nose.  The court sentenced O'Donnell to 6-12 months' imprisonment.  O'Donnell filed a timely appeal to this Court, and both O'Donnell and the trial court have complied with Pa.R.A.P. 1925.  O'Donnell raises a single issue in this direct appeal: "The trial court erred in precluding [O'Donnell] from cross-examining the [complainant] concerning [her] mental health history."  Brief For Appellant, p. 18.  We conclude that the trial court acted within its discretion in precluding this testimony.  Accordingly, we affirm.

_____

[1] 18 Pa.C.S. § 2701(a)(1). The court also found O'Donnell guilty of harassment and disorderly conduct but did not impose any penalty for these offenses.

To place O'Donnell's single argument in context, we outline the evidence adduced during trial. On September 22, 2012, O'Donnell's daughter, C.O., took the bus to a local mall without O'Donnell's permission. N.T., 4/16/14, pp. 66-67. C.O. took this trip with her friend, M.D. *Id*. at p. 29. The O'Donnell family lives across the street from M.D.'s family. *Id*. O'Donnell was upset both because he thought C.O. had taken money from him and because she was not answering her cell phone. *Id*. at pp. 66-67. He spoke with M.D.'s mother at her home and learned their daughters had gone to the mall. *Id*. at pp. 9, 66-67.

O'Donnell began driving towards the mall and found C.O. and M.D. exiting a cab at a baseball field near their homes. *Id*. at p. 68. He drove them back to M.D.'s home, and M.D. got out of the vehicle. *Id*. at p. 18. O'Donnell and C.O., both of whom were still in the vehicle, began arguing as O'Donnell attempted to wrest C.O.'s cell phone from her grasp. *Id*. at pp. 13, 32. O'Donnell grabbed C.O.'s shirt, ripping the collar, and struck her in the face. *Id*. at pp. 32-33.

M.D.'s mother heard a loud scream and saw C.O. running down the street with blood on her face. *Id*. at p. 13. She took C.O. inside M.D.'s residence and contacted the police. *Id*. at p. 15. O'Donnell came to the door, but M.D.'s mother would not permit him inside or allow access to C.O. until the police arrived. *Id*. The police arrived and observed O'Donnell yelling profanities at M.D.'s house. *Id*. at pp. 53, 58.

C.O. testified on direct examination that while she was in O'Donnell's car he pulled her shirt and punched her in the nose, causing it to bleed. *Id*. at 32-33. She stated that O'Donnell grabbed the phone "after he punched me." *Id*. at 46. On cross-examination, defense counsel inquired if O'Donnell bumped her in the nose during their struggle over the cellphone, and C.O. answered: "I'm not quite sure." *Id*. at 47. Defense counsel asked: "He was tugging at [the phone] and you were tugging back, is that fair to say?" C.O. agreed. *Id*.

C.O. wrote several letters to O'Donnell after the altercation, one of which said: "I'm sorry for the other letters, but I was really mad, you didn't really hit me, I bumped it on the ground." *Id*. at 36. C.O. testified that she wrote this because she did not want O'Donnell to get into trouble, adding: "Deep down I love my dad." *Id*. She testified: "I don't like when people get in trouble. I like blame myself for it." *Id*. at 37. On cross-examination, C.O. acknowledged that she was in Horsham Clinic[2] when she wrote these letters. *Id*. at 38. She stated she was in the clinic "because of the whole issue. And I got mad and I just was trying to run away." *Id*. When asked, "who were you trying to run away from?" C.O. responded: "This whole situation. I just don't feel like I need to go through it." *Id*. She further exclaimed: "Because

---

[2] The record does not describe the nature of the Horsham Clinic.

I don't think — I don't think I should be in this world...I just don't think that people love me." ***Id***. at 38-39.

We turn to the line of questions at the heart of this appeal. On cross-examination, the following exchange took place:

> DEFENSE COUNSEL: C.O., you have had a history of mental illness; is that right?
>
> PROSECUTOR: Objection, your Honor.
>
> THE COURT: Sustained.
>
> Q. Did you ever try to injure yourself?
>
> A. What?
>
> PROSECUTOR: You don't even have to answer that one.
>
> Q. You have injured yourself in the past, right?
>
> PROSECUTOR: Objection.
>
> THE COURT: Sustained.
>
> Q. You banged your head into the wall?
>
> PROSECUTOR: Objection.
>
> THE COURT: Sustained.
>
> THE WITNESS: I told you my life is worthless. I told you I am worthless. (At this time, the witness exits the courtroom)
>
> PROSECUTOR: Judge, can I ask you know, how many questions remain? I'm not trying to limit Mr. Keightly's cross- examination, but I certainly want to move on from that line of questioning.

THE COURT: All right. Mr. Keightly, can you give me an idea.

DEFENSE COUNSEL: It is killing me, Your Honor. I am going to just cut it off and have Mr. O'Donnell speak to the Court, if that is okay. I mean, I don't have it in my heart to cross examine this girl anymore. You know it is —

THE COURT: Well, I mean, you have the duty to cross examine her and represent your client. What does your client want to do?

DEFENSE COUNSEL: Well —

THE COURT: Do you want to speak with him?

(Discussion off the record between defense counsel and the defendant)

DEFENSE COUNSEL: He says he doesn't want to put her through it anymore. He would like to tell his side and then have your Honor make a decision.

PROSECUTOR: The Commonwealth will waive any redirect examination as well then. We will just move on to the next witness.

(At this time, the witness returns to the courtroom)

PROSECUTOR: Good news, you are done.

(Witness excused)

*Id*. at pp. 48-51. O'Donnell now argues that the trial court erred in sustaining the Commonwealth's objections and precluding him from cross-examining C.O. on her mental health history. Brief For Appellant, pp. 18-26.

In general, the admission of evidence

is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only

- 5 -

upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super.2009).

Furthermore, when determining the admissibility of evidence of a witness' mental instability,

[t]he crucial determination that a trial judge must make. . .is whether [this evidence] is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him. The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime.

*Commonwealth v. Mason*, 518 A.2d 282, 285 (Pa.Super.1986).

O'Donnell has waived this argument. O'Donnell's attorney withdrew his attempt to cross-examine C.O. on her mental health history by stating "[O'Donnell]. . .doesn't want to put her through it anymore" after C.O. exited the courtroom during her cross-examination. N.T., 4/16/14, pp. 49-51. *Commonwealth v. Moore*, 635 A.2d 625, 628 (Pa.Super.1993) (defendant waived relevancy objection to toxicologist's testimony about

defendant's blood alcohol content at time of testing where relevancy objection was withdrawn during trial).

Even if O'Donnell preserved this argument for appeal, it is devoid of merit. O'Donnell seems to believe that C.O. has some mental illness because C.O. has had treatment at the Horsham Clinic and because of C.O.'s testimony that she feels worthless and unloved. O'Donnell fails to demonstrate, however, that C.O.'s alleged mental illness "in some way impaired [her] capacity to observe the [critical] event[s] at the time of [their] occurrence, to communicate [her] observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime." *Mason*, *supra*, 518 A.2d at 285. Absent this showing, cross-examination concerning C.O.'s alleged mental illness is inadmissible. The trial court thus acted within its discretion by precluding questions on this subject.

Finally, even if the trial court abused its discretion, such error was harmless, because the court admitted other evidence of C.O.'s mental illness which it factored into the verdict. Harmless error is error that does not prejudice the defendant. *Commonwealth v. Adams*, 39 A.3d 310, 322 (Pa.Super.2012). "[A]n error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict." *Id*. "Where there is a reasonable probability that an error might have contributed to the conviction, the error is not harmless." *Commonwealth v. Story*, 383 A.2d 155, 163 (Pa.1978).

O'Donnell submitted evidence of C.O.'s mental health through his own testimony. N.T., 4/16/14, p. 73 ("I had counselors coming out to the house once, twice a week. They were going to her school. . .She was on medication. You know, going back to doctors trying to – they were switching her medications because they were trying to see what works best"). The trial court considered C.O.'s condition and wrote: "Testimony from both [O'Donnell] and [C.O.] made this court aware of some of her mental health history. . .yet this court did not credit [O'Donnell's] version of what occurred in the vehicle." Pa.R.A.P. 1925(a) Opinion, p. 5.

For these reasons, we affirm O'Donnell's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/23/2015</u>