J-S67030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                           :            PENNSYLVANIA
                                           :
                 v.                          :
                                         :
CALVIN CAMPS                         :
                                         :
                Appellant         :     No. 3870 EDA 2016

Appeal from the Judgment of Sentence July 28, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003915-2014

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 29, 2017**

Calvin Camps ("Camps") appeals the judgment of sentence entered following his conviction of one count each of aggravated assault and possessing an instrument of crime ("PIC"), and his guilty plea to possession of a controlled substance (cocaine).  We affirm.

The trial court summarized the relevant facts underlying the instant appeal as follows:

> On January 17, 2014, Catherine Smalls [("Smalls")] was at a speakeasy, located on the 2800 block of North Park Avenue in Philadelphia, getting a drink.  Smalls, with her drink in her hand, then stepped outside of the speakeasy to go to the corner. [Camps], who had previously sold drugs to Smalls, approached Smalls in the street and accused her of using a counterfeit $20 bill during an earlier drug transaction.  The two began arguing and Smalls threw her drink in [Camps's] face.  [Camps] then slashed Smalls in the face from her left ear to her left cheek with a blade, causing blood to run from her face "like water."

_____

*   Former Justice specially assigned to the Superior Court.

Smalls ran to a nearby fire station[,] where the firefighters called an ambulance, which transported Smalls to Temple University Hospital. At the hospital, doctors ensured that her facial nerves were not severed, though Smalls was unable to lift her left eyebrow, and performed surgery to clear a blood clot in her face. Additionally, an artery in her face was severed, requiring a clamp on the artery to stop the bleeding. Smalls'[s] salivary glands, the lower part of her left eye, and cornea were also cut. Her wound was approximately five millimeters deep. A doctor had to sew her wound shut using multiple layers of stitching.

Once discharged from the hospital, Smalls began to search for Camps. On February 18, 2014, Smalls located [Camps] selling drugs, but she did not call the police for fear of angering the other drug dealers on the block. On February 20, 2014, Smalls again saw [Camps] at a gas station near where she was attacked and called police, who arrested [Camps].

Trial Court Opinion, 2/1/17, at 2-3 (citations omitted).

Following a jury trial, Camps was found guilty of one count each of aggravated assault and PIC. Separately, Camps pled guilty to one count of possession of a controlled substance. The convictions were consolidated for sentencing. The trial court sentenced Camps to a prison term of four to ten years for his conviction of aggravated assault. For his conviction of PIC, the trial court sentenced Camps to a consecutive prison term of one to five years. Finally, for his conviction of possession of a controlled substance, the trial court sentenced Camps to a concurrent probation term of six months. Camps timely filed a post-sentence Motion, which the trial court denied. Thereafter, Camps filed the instant timely appeal, followed by a Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Camps now presents the following claim for our review: "Did not the [trial] court err and abuse its discretion by denying [Camps's] pretrial [M]otion *in limine* to introduce evidence of [Smalls's] schizophrenia diagnosis and untreated status[,] [because] evidence of [Smalls's] mental state was relevant to impeach her credibility?" Brief for Appellant at 3.

Camps claims that at trial, he was not allowed to challenge Smalls's credibility "by presenting evidence that she was suffering from untreated schizophrenia at the time of the assault." *Id.* at 11. According to Camps, on the night of the assault, not only was Smalls under the influence of cocaine and alcohol, but she also suffered from untreated schizophrenia. *Id.* at 16. Camps directs our attention to federal court cases recognizing that a diagnosis of schizophrenia or psychosis is relevant, unless it is too remote in time from the events listed in the indictment. *Id.* at 13. Camps contends that schizophrenia is, by its very definition, relevant and admissible to impeach a witness's credibility. *Id.* Camps further directs our attention to *Commonwealth v. Mason*, 518 A.2d 282 (Pa. Super. 1986), wherein this Court held that evidence of a schizophrenia diagnosis was relevant to the witness's capacity to observe, communicate and maintain a clear recollection. *Id.* at 14. Camps points out that the only evidence linking him to the assault was Smalls's testimony, which identified Camps as the person who had cut Smalls. *Id.* at 15. As a result, Camps argues, her credibility was vital to the Commonwealth's case and his defense. *Id.*

The following standard governs our review of the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.
>
> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (quoting *Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*) (internal citations omitted)).

Our Supreme Court has explained that,

> [w]hen a witness suffers from a mental disability relevant to his or her ability to accurately observe, recall or report events, the jury must be informed of the disability in order to assist it in properly assessing the weight and credibility of the witness's testimony. The evidence can be said to affect credibility when it shows that the witness's mental disorganization impaired his or her capacity to observe an event at the time of its occurrence, to maintain a clear recollection of it, or to communicate the observation accurately and truthfully at trial.

*Commonwealth v. Davido*, 106 A.3d 611, 637 (Pa. 2014) (citations omitted). In *Mason*, upon which Camps relies, this Court similarly explained that

[t]he crucial determination that a trial judge must make in ruling on the admissibility of evidence of a witness's mental instability is whether it is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him. The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime.

*Mason*, 518 A.2d at 285-86. In that case, the

[a]ppellants' counsel attempted to introduce into evidence psychiatric records from the Philadelphia State Hospital where [the witness] had been committed prior to trial. The court reviewed the psychiatric report on the record and noted that [the witness] was admitted in September 1978, discharged in November of that year and diagnosed as "schizophrenia, paranoid type with features of depression, mild mental retardation." The court further noted that the report indicated [that the witness] had been taking Thorazine prior to this commitment and that this medication should continue upon his discharge. During his commitment, there is also an indication that [the witness] denied knowing his mother, who lived with him, heard voices, **and was said to have poor remote and immediate recall.** …

*Id.* at 286 (emphasis added). Consequently,

[b]ecause the information contained in the psychological reports shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime, the court erred in its determination that the psychological reports were inadmissible.

*Id.* (citation and internal quotation marks omitted).

In the instant case, Camps failed to present a medical, psychiatric or expert report, or any other evidence demonstrating that Smalls's diagnosis

- 5 -

of schizophrenia was relevant to her credibility and her ability to recall the event and communicate what had happened:

> THE COURT: … I don't see a report or anything else that would lead me to know, and this is not within the purview of the lay knowledge[,] whether a schizophrenia diagnosis would affect [Smalls's] ability to – the things I would allow you to get it in more is if it affected her ability to perceive, recollect or communicate; right? Because all of those things would go to her ability to be a witness. Anything else is just tarring somebody who has a mental illness[, and] isn't allowed. That's the same for the medication. So[,] do you have evidence that anything in the medical records that you've come up with would have any probative value on those issues? You say they do, but that's your say so. For instance, if she was grossly intoxicated, ordinarily[,] that would come in because that affects your ability to perceive. If she was under the influence of drugs either the day she's testifying today or the day that it happened, because that would then affect her ability to perceive, to communicate it to the police.
>
> You do have something about medication and alcohol the day of the event, right? So let's do the easier one first. Do you have anything that says schizophrenia diagnoses means she can't perceive things or report them accurately? I think you need an expert opinion on that, and you don't have one; right?
>
> [Defense counsel]: I don't, Your Honor. I would be relying on the layperson's knowledge that schizophrenia can cause hallucinations and delusions.
>
> THE COURT: I don't know. I mean, I think there's all different kinds and degrees of schizophrenia, and just to admit a diagnosis of it, I can tell you that I certainly wouldn't know that. I mean, I do know that people who are schizophrenic can have some hallucinations. I don't know if she's one of them or whether her particular diagnosis has those symptoms or whether those symptoms are always present. So[,] if you don't have anything and you're currently relying on judicial notice of that, I'm going to keep that out. What I do think I can judicially notice is that alcohol and crack cocaine and those things can affect your ability to perceive, and I would be inclined to let that

in if you're telling me that you have medical records that show a significant portion of those the day of the event.

…

Again, unless you have some evidence that the medications have the effect you say, because you list them, but I don't know. If I don't know, I'm not going—didn't you let somebody on the jury who was a pharmacologist? Actually, a PhD. She probably would know, but, you know, we can't try your case to her.

So, I think based on everything I've been presented with then, I'm going to keep out … the diagnoses and the medication ….

N.T., 5/31/16, at 27-31.

As the trial court stated in its Opinion,

[a]bsent some showing that Smalls'[s] schizophrenia impaired [her] ability to perceive and recall the events of the attack, the probative value of any evidence of the diagnosis was far outweighed by the potential for unfair prejudice and confusion of the jury. Accordingly, the [c]ourt was well within its discretion to exclude the proffered evidence.

Trial Court Opinion, 2/1/17, at 5. We agree and affirm on this basis as to

Camps's claim. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/17