Commonwealth *v.* Towber, Appellant.

Argued March 20, 1959. Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Stephen J. McEwen, Jr.,* with him *Stephen J. McEwen,* for appellant.

*Ernest L. Green, Jr.,* Assistant District Attorney, with him *J. Harold Hughes,* First Assistant District Attorney, and *Raymond R. Start,* District Attorney, for appellee.

OPINION BY HIRT, J., July 3, 1959:

The defendant was indicted on charges of burglary, robbery and other related offenses arising from the

same set of circumstances. Leonard J. Fitzgerald, a co-defendant pleaded guilty to all of the charges. Towber whose defense was an alibi, was found guilty as indicted and was sentenced.

Shortly after two o'clock in the early morning of October 26, 1957, two masked men, one of them with a sawed-off shotgun, entered the Birmingham Grille, a diner at Painter's Crossroads in Delaware County. The gun was discharged into the roof of the structure and eight or ten customers together with the employes who were on duty were herded into a corner of the diner. The men in the group were made to surrender their wallets, and the women, their handbags. The cash register was rifled. The two holdup men made their escape in a 1957 Chevrolet which had been stolen some hours before from a parking lot near a steel mill in Coatesville. A witness, who had driven up to the diner while the holdup was in progress, realized what was going on and was instrumental in notifying the police. Police officers observed the get-away car as it was driven through West Chester and followed it. They were eluded however and never caught up with the car which was later abandoned at the side of a country road, several miles from Coatesville. It was suspected that Fitzgerald had a part in the crimes and he was arrested in Coatesville about 4:30 of the same morning. At the State Police barracks immediately following his arrest, Fitzgerald admitted his part in the crime as the accomplice of appellant Wasyl Towber. He said that it was Towber who suggested that they "pull a job", when he met him by chance early in the evening before, in Coatesville where they both lived; that Towber then had the shotgun under his coat and he also had a rubber mask; that after stealing the Chevrolet car they proceeded to the diner, with Towber driving and arrived there about 2 a.m.; that Towber purposely dis-

charged the gun and it was he who robbed the people who were in the diner, while Fitzgerald, at Towber's direction, rifled the cash register; that they divided the stolen money between them in a vacant building known as Old Mansion and there abandoned the stolen car; that they separated as they were walking along toward Coatesville.

Because both of the men were masked, the victims who appeared as witnesses, were unable to identify the robbers but their testimony as to general physical characteristics fitted both defendants. Towber was arrested later in the same morning and was taken to the police barracks. There, according to the testimony, Fitzgerald's confession was read in the presence of both Fitzgerald and Towber; all three of the State Police officers who also were present at the reading of the confession testified that Towber did not deny the implication of guilt but stood mute and refused to say anything. Towber at the trial denied that he refused comment when Fitzgerald's confession, charging him as an accomplice, was read in his presence. He testified: "I asked to plead the 5th Amendment to the Constitution because I didn't know what everything was about, I didn't know what to say." The officers' testimony was that the claim of immunity under "the 5th amendment" did not come until at least two hours later. The trial court submitted the testimony of Towber's standing mute and refusing to answer as evidence of his guilt, under *Com. v. Vallone*, 347 Pa. 419, 32 A. 2d 889. However since Towber testified that he claimed immunity under the 5th amendment at the time when Fitzgerald's statement was read to him, the jury should have been specifically instructed to consider both the evidence of the Commonwealth and that of the defendant, as to Towber's conduct at that time; for only if the jury accepted the testimony of the Commonwealth

witnesses, namely the three State policemen, that Towber then stood mute could his silence be deemed an admission of his guilt. Without submitting to the jury the question as to when Towber claimed immunity the trial judge charged the jury: "Now the next thing, and this is only to test the credibility of the defendant Towber, he told you under oath when he was being cross-examined that he did not answer because he claimed the 5th Amendment. Now it is all right for defense counsel to call your attention to the fact that that is in the newspapers in great big black headlines, 5th Amendment, 5th Amendment, refuse to answer on the ground it may incriminate me, and I don't want to testify against myself, and so forth. And that was a legitimate argument. But, on the other hand, you have a right to say to yourselves that if he did do this why did he do it, did he have a reason for not answering, and did he have a reason for claiming, as he said under oath, under cross-examination from the witness stand, he claimed the 5th Amendment." This charge was reversible error for since this defendant could not be compelled to give evidence against himself, the claim of the 5th amendment could not have been construed as an admission of his guilt, nor even as a presumption against him, no matter what his motive in claiming it. In *Boyle v. Smithman*, 146 Pa. 255, 274, 23 A. 397, it is said: "The privilege of the defendant to decline to furnish evidence against himself, would be of very little value if the fact that he claimed its protection could be made the basis of an argument to establish his guilt. To extend to a defendant the formal protection of his privilege, and then allow the fact that he had claimed it, to be used as affording a presumption against him, would be a sort of mockery of which the law is not guilty." *Philadelphia v. Cline et al.*, 158 Pa. Superior Ct. 179, 185, 44 A. 2d 610, is to the same ef-

fect. Moreover, it is of no significance that defendant failed to claim immunity under Art. 1, §9 of the Pennsylvania Constitution. "The language [of the defendant's claim] is not important; no specific term or expression is required in order to enable him to assert the privilege so long as it is so understood": *Schwinger Appeal,* 181 Pa. Superior Ct. 532, 539, 124 A. 2d 133.

A new trial must be granted for additional reasons. The competency of Fitzgerald as a witness who had a criminal record, was not in question but since he was Towber's self-confessed accomplice, impeachment of Fitzgerald's credibility was vital to Towber's defense. It was contended that Fitzgerald had suffered from a psychopathic mental disorder which had a bearing on his credibility as a witness; and that the court erred in refusing to admit evidence of Fitzgerald's commitment for mental treatment. In the record there is a reference to hospital psychiatric treatment of Fitzgerald in 1954; and the record of the Pennsylvania Hospital offered in evidence, and refused over objection, shows his commitment for treatment in December 1956 and his release (but not before March 31, 1957), only about 7 months before the date the crimes were committed and the date when the confession of Fitzgerald implicating Towber was made. The general rule as stated in *Commonwealth v. Kosh,* 305 Pa. 146, 156, 157 A. 479 is that: "Mere mental derangement on some matter not connected with the subject of the litigation and not affecting the testimonial ability of the witness is not even to be considered by the jury in determining the credibility of the witness." However from the record before us it is clear that Fitzgerald's alleged mental derangement cannot be characterized as unrelated to the question of his credibility (as distinguished from his competency) as a witness on the issues on trial. The admission of the hospital record showing

Fitzgerald's commitment for mental treatment was improperly refused over Towber's objection and the refusal constituted reversible error. Psychiatric treatment in a hospital within seven months of the date of trial was near enough to raise a question for the jury as to the effect of Fitzgerald's mental disorder on his credibility. 3 Wigmore 3rd Ed., §§931, 932, 935, 997b and 998b; Cf. *Commonwealth v. Repyneck*, 181 Pa. Superior Ct. 630 and note on pg. 637, 124 A. 2d 693, and *Peckham v. United States*, 210 Fed. 2d 693 at 698. On a retrial of the case Towber also should have the right of *proper* cross-examination of Fitzgerald as to the nature and extent of his mental disorder and his commitment for treatment. 58 Am. Jur., Witnesses, §699.

Finally, defendant Towber was further seriously prejudiced in the eyes of the jury by the Commonwealth's rebuttal testimony. After defendant had testified that he was beaten at the State Police barracks and that he had refused to answer questions for that reason, Sergeant Urella was called by the Commonwealth in rebuttal. His testimony that defendant was *not* mistreated and that he *did* answer questions was proper rebuttal. But he was then permitted, over defendant's objection, and motion for the withdrawal of a juror, to relate what defendant then said, including (in answer to a specific question by the assistant district attorney) that the defendant had "knocked up" a certain girl in Coatesville. As was recently pointed out by us in *Commonwealth v. Steinberg*, 189 Pa. Superior Ct. 381, 386, 150 A. 2d 131, and the authorities therein cited, a defendant may not be contradicted by showing particular instances of misconduct disconnected with, and collateral to, the issue being tried. Nor was the admission of such evidence justified on the theory stated in the opinion of the lower court that: ". . . the truth of this matter was not in issue but only whether the defendant had made the same."

Judgment of sentence reversed and a new trial ordered.