510 A.2d 1235

**COMMONWEALTH of Pennsylvania**

v.

**Clinton DUDLEY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed June 5, 1986.

Reargument Denied July 2, 1986.

Harold J. Funt, Allentown, for appellant.

John J. Walden, Assistant District Attorney, Norristown, for Com., appellee.

Before CIRILLO, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence which was imposed upon appellant, Clinton Dudley, after he was convicted by a jury of rape, simple assault, and indecent assault. We must reverse and remand for a new trial for the reasons herein given.

Appellant raises the following issues: (1) whether the trial court erred in refusing to allow testimony regarding the victim's psychiatric history; (2) whether the trial court abused its discretion in denying defense counsel's motion to excuse a juror and/or to grant a new trial; (3) whether the trial court erred in permitting the prosecution to present testimony regarding appellant's extradition from the state of Ohio; (4) whether reversible error was committed when the prosecutor elicited information regarding the use of the National Crime Information Center; (5) whether the trial court erred in allowing the prosecution to present a police detective on rebuttal; (6) whether the trial court erred in

denying appellant's request for the missing witness instruction; and, (7) whether the sentence was excessive because the trial court failed to give due consideration to the evidence which was presented on appellant's behalf. Appellant contends that trial counsel was ineffective for: (1) failing to cross-examine the victim regarding the fact that she had been under the care of a psychiatrist within seven (7) months of the date of trial when he knew that the nature of her mental derangement was connected directly with the subject of the litigation and when he further knew that impeachment of her credibility was vital to the appellant's defense; (2) for failing to suppress evidence introduced by the prosecution regarding a statement attributed to appellant that he "hated whites"; (3) for failing to object to the prosecution's rebuttal witness and for waiving appellant's right to raise the issue in post-verdict motions; (4) for failing to object to a prejudicial remark which was made by the prosecutor and for waiving appellant's right to raise the issue in postverdict motions; (5) for failing to question a detective and/or the appellant properly about an unidentified detective who was present in the squad room when the appellant was interrogated which permitted the trial court to rule against appellant on the missing witness instruction; (6) for failing to object prior to trial to the validity of the information because the information contained only a rubber-stamped facsimile of the signature of the district attorney; (7) for failing to object to the prosecution's motion to amend the information by adding a charge of indecent assault; and (8) for failing to advise the appellant that he was under no legal requirement to take the witness stand and to testify at trial.

Because we find that the trial court abused its discretion in refusing to allow testimony regarding the victim's psychiatric history, we must grant appellant a new trial.

The record sets forth the following scenario:

On the afternoon of August 9, 1980, appellant, a licensed "door to door" magazine salesman, knocked at the residence of the victim, Priscilla Cumberland. After the indi-

viduals discussed the possibilities of a magazine sale, the conversation turned to a more personal nature with appellant agreeing to return later that day to the victim's home. Although appellant did not call, he did arrive at the victim's apartment at 11:30 p.m. Appellant took off his coat and the parties engaged in further conversation.

At this point, the facts are in dispute. According to the victim, the appellant led her into the bedroom and raped her. On the other hand, the appellant contends that the victim consented to the sexual intercourse, and that the victim became upset when appellant refused to give her money upon the appellant's departure.

There were no other eyewitnesses to the crime. The physical evidence which was introduced at trial established that semen was present on the victim's sheets and on the victim's sexual organs. However, there was no evidence of trauma on the victim's sexual organs. Also, the evidence indicated that there was a cut which measured one centimeter in length on the victim's lip.

Both before and during the trial, defense counsel sought to review the records of Muhlenberg Medical Center and Allentown Hospital because the victim had been hospitalized at these institutions for psychiatric treatment within a few months of the incident. The victim had been treated at Muhlenberg Medical Center from October 18, 1980 through November 11, 1980 and at Allentown Hospital one month after the incident.

The trial court deferred a ruling on defense counsel's access to the hospital records until the time of trial. However, at the trial, defense counsel stated that a psychiatrist should be called "for an in camera hearing to determine the relevancy of the records and whether or not there was—well, two things—whether or not she would be competent and whether or not her state of mind [which was] related to her psychiatric condition would be relevant to what happened on the date in question". Trial Transcript at 10.

The trial court eventually ruled that defense counsel could not introduce the testimony of the psychiatrist who treated the victim *after* the incident.

The trial court concluded that the psychiatric testimony "would really serve no purpose other than to blacken the reputation of the victim." Trial Transcript at 305. In its opinion, the trial court stated that "[t]he defense did not allege, nor does the record reflect, that the victim in this case ever denied having received psychiatric treatment in the past or denied ever having exhibited "seductive behavior [at the hospital]". Trial Court's Opinion at 4. The appellant contends that the victim's periods of hospitalization were relevant and admissible in this case. We agree.

This Court recognizes that "treatment in a mental hospital within seven months of the date of trial is near enough to raise a question for the jury as to the effect of the mental disorder on [a witness's] credibility". *Commonwealth v. Chuck*, 227 Pa.Super. 612, 323 A.2d 123 (1974), petition for allowance of appeal denied July 22, 1974. Accord *Commonwealth v. Duffy*, 238 Pa.Super. 161, 175, 353 A.2d 50, 57 (1975), petition for allowance of appeal denied May 21, 1976. We also have said that "the fact that the witness was mentally competent to testify does not mean that evidence as to his mental disability should be excluded". *Id.*

The guidelines which we have set forth in examining this issue have been summarized in the following manner:

> The crucial determination that a trial judge must make in ruling on the admissibility of evidence of a witness's mental instability is whether it is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him.[*] The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection

in the meantime. *See Commonwealth v. Repyneck*, 181 Pa.Super. 630, 124 A.2d 693, allocatur refused, 181 Pa.Super. xxiv (1956).

[*] Pennsylvania's position on the introduction of evidence of mental imbalance to discredit a witness who is admittedly competent to testify was first stated in dicta in *Commonwealth v. Kosh*, 305 Pa. 146, 157 A. 479 (1931): "Mere mental derangement on some matter not connected with the subject of the litigation and not affecting the testimonial ability of the witness is not even to be considered by the jury in determining the credibility of the witness." *Id.*, 305 Pa. at 156, 157 A. 482–483.

This statement was later reaffirmed as the general rule in *Commonwealth v. Towber*, 190 Pa.Super. 93, 152 A.2d 917 (1959). Despite the recognition of a general rule of inadmissibility where the mental unsoundness is unrelated to the matter at hand, this Court in *Towber* went on to find reversible error where evidence of a psychopathic mental disorder requiring commitment 7 months prior to a burglary trial, offered to impeach an important witness, was refused.

*Commonwealth v. Butler*, 232 Pa.Super. 283, 287, 331 A.2d 678, 680 (1974). (Footnote included).

According to the testimony which was produced at an evidentiary hearing, the victim had hallucinations and had suffered a psychotic episode approximately two months after the incident and approximately six months before the trial. According to the psychiatrist, the victim "has an hysterical personality which means when she gets overwhelmed or needs more attention, and [sic] she does have childish attention-seeking behavior ... then she has fainting spells". N.T. 10/10/84 at 21–22.

■ Because the victim's hospitalizations occurred within seven months of the trial and also because the victim's mental instability "shows that [her] mental disorganization in some way impaired [her] capacity to observe the event at the time of its occurrence, to communicate [her] observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime, this evidence was relevant and should have been admitted at trial." *Commonwealth v. Butler*, 232 Pa.Super. at 287, 331 A.2d at 680.

■ Also, because impeachment of the victim's testimony was vital to the appellant's defense, the victim's recent periods of hospitalization were relevant. *Commonwealth*

*v. Towber,* 190 Pa.Super. 93, 97, 152 A.2d 917, 920 (1959). The record also indicates that the victim was hospitalized and/or treated at the emergency room at Muhlenberg and Allentown Hospitals on other occasions during 1978 and 1984. On remand, the trial court should determine whether these periods of hospitalization are admissible in view of the guidelines which have been set forth in *Commonwealth v. Butler, Id.*

■ Appellant also contends that there were specific instances during her hospitalization in which the victim exhibited seductive behavior. This issue appears to be moot because the record establishes that there were no specific instances in which the victim acted overtly familiar with the male patients. See *Commonwealth v. Thomas,* 346 Pa.Super. 11, 498 A.2d 1345 (1985).[1]

Accordingly, the judgment of sentence is reversed and a new trial is granted.

MONTEMURO, J., files a dissenting opinion.

MONTEMURO, Judge, dissenting:

I dissent. *Commonwealth v. Butler,* 232 Pa.Super. 283, 331 A.2d 678 (1974), upon which the majority relies heavily for its conclusion, also requires that to inject at least a

---

1. The dissenting opinion of Montemuro, J. overlooks the fact that there are two aspects to the claim which appellant raises. The first aspect of the issue is whether the fact that the victim was hospitalized *at all* within seven months of the trial is relevant to the issue of the witness's credibility. The second aspect of the issue is whether certain "sexual" behavior which occurred during a period of hospitalization should have been admitted.

   The second aspect of this issue appears to be moot and is more akin to an argument under the Rape Shield Law. 18 Pa.C.S.A. § 3104. *See Commonwealth v. Majorana,* 503 Pa. 602, 470 A.2d 80 (1983).

   However, we find that the fact that the witness was hospitalized for hallucinations recently near the time of the trial and the incident in question raised enough of an issue for the jury to consider in examining a witness's credibility.

   Additionally, the dissenting opinion seems to overlook the fact that on remand, the trial court will be given an opportunity to examine whether the witness's period of hospitalization which occurred in 1978, which was two (2) years *before* the incident in question, should be admissible.

semblance of relevancy into its admission, testimony with regard to a witness' psychiatric history contain some specific indication that an illness existed at the time of and somehow influenced the events of the date in question. Here there is none; the treatment, occurring subsequent to the rape, could as well have been necessitated by the attack as causally connected to it. In fact the psychiatrist, whose evidence the majority find so vital, at the ineffectiveness of counsel hearing directly contradicted the offer of proof for her putative trial testimony. There is no reason to reverse on this basis, and, since the majority somewhat quixotically finds the issue moot, the necessity for remand is obviated.

I would accordingly affirm.