J-S30039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                                    :
           v.                     :
                                    :
                                    :
CHRISTOPHER ALLEN BIDDINGER    :
                                    :
          Appellant         :    No. 1506 MDA 2023

Appeal from the Judgment of Sentence Entered August 28, 2023
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CP-49-CR-0000684-2021

BEFORE: PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED NOVEMBER 05, 2024**

Appellant, Christopher Allen Biddinger, appeals from the judgment of sentence entered by the Court of Common Pleas of Northumberland County after a jury found him guilty of one count of Aggravated Indecent Assault -- Complainant Less Than 13 Years Old,[1] Aggravated Indecent Assault -- Complainant Less Than 16 Years Old,[2] Indecent Assault -- Person Less Than 13 Years of Age,[3] Indecent Assault -- Person Less than 16 Years of Age,[4] and Corruption of Minors – Defendant Age 18 or Above.[5] Herein, Appellant challenges various evidentiary rulings of the trial court. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3125(a)(7).
[2] 18 Pa.C.S. § 3125(a)(8).
[3] 18 Pa.C.S. § 3126.
[4] 18 Pa.C.S. § 3126(a)(8).
[5] 18 Pa.C.S. § 6301(a)(1)(i).

The trial court sets forth the relevant facts and procedural history, as follows:

> On May 28, 2020, police were contacted at the request of Northumberland County Children and Youth Services regarding a Childline referral they had received. The report was that A.G.B. disclosed to a Children and Youth Services [("CYS")] caseworker that she was sexually assaulted by the Defendant [(hereinafter, "Appellant")], who is A.G.B.'s father (At the time of trial, A.G.B. identified as male and asked to be referred to as "C.B.").[6] The investigation revealed that at various times while Appellant was out of jail he was living with his grandmother and A.G.B.
>
> An interview of A.G.B. was conducted at the Child Advocacy Center. A.G.B. disclosed numerous incidents of sexual assault by Appellant which resulted in the charges being filed by the Pennsylvania State Police.
>
> A preliminary hearing was held on April 4, 2021, and all charges were bound over. Counsel filed an Omnibus Pretrial Motion (Habeas Corpus) on July 2, 2021. There was also an Amended Omnibus Pretrial Motion as well as a *Pro Se* Omnibus Pretrial Motion. After several hearings the [trial court] issued an Order [of January 22, 2023,]. . . den[ying] the Motion for Writ of Habeas Corpus and directed Appellant to file a Motion *in Limine* to assert a defense of prior false allegations by A.G.B.
>
> The Motion *in Limine* was filed March 17, 2023, and, among other things, requested admission of prior false allegations made by A.G.B. against other people as well as the ability to introduce evidence of A.G.B's mental health at trial.
>
> . . .
>
> A hearing was held on the . . . Motion *in Limine* on April 10, 2023. The defense offered no argument as to what the "evidence" of false accusations was. [The trial court] was aware of Children and

---

[6] C.B.'s first name is a traditionally male name. This decision refers to the victim as "C.B." and "he/him" when discussing his participation at the criminal trial.

Youth Services records regarding prior investigations of sexual abuse perpetrated against the victim. The [trial court judge] hearing the Motion *in Limine* was not the same [trial court judge who] conducted the in-camera review of the [CYS] records and was not privy to those records at the Motion *in Limine* hearing.

The trial court surmise[d] that these reports were unfounded[, and reasoned that] an unfounded report does not indicate that the report was false only that there was insufficient evidence to have the report indicated or founded by a court. Defense counsel offered the CYS records as proof that the allegations were false[, but] the [trial court] was given no indication as to any other proof the defense had to show that any allegations were in fact false.

At least one of the allegations apparently occurred in 2009[, when the victim would have been seven years old]. The Commonwealth argued that some of the alleged false allegations were too tenuous in time, that the introduction of such allegation was more prejudicial than probative, and that introduction of this evidence could possibly be in violation of the Rape Shield Law, 18 Pa.C.S. § 3104.

. . .

Regarding the more recent allegations, the [trial court] held those allegations were not directed against [Appellant] and that their admission would violate [the Rape Shield Law]. . . . [Agreeing with the Commonwealth's position regarding the admissibility of the victim's prior allegations of abuse, and citing a lack of evidence proffered by defense counsel as to the specifics of the allegations, the trial court] denied Appellant's Request for Admission of Prior False Allegations on May 1, 2023, . . . . rul[ing] the introduction of claims of false allegations [was] inadmissible.

Trial commenced May 18, 2023, and concluded May 19, 2023. The Commonwealth had five witnesses testify: the victim [A.G.B/C.B.], Christina Showers, the victim's great grandmother, Sherry Moroz, the forensic interviewer at the Child Advocacy Center, [Pennsylvania State] Trooper Tyler Watson, and Dr. Patrick Bruno, medical director of the division of child advocacy and safety at Geisinger Medical Center.

Defense counsel presented two witnesses, Anastasia Farrell, a prior paramour of [Appellant] and [Appellant] himself. Ms. Farrell

- 3 -

testified that she dated [Appellant] and that [Appellant] had a large implant in his penis which would be obvious to anyone who saw it. N.T., 5/18/23, at 225 (trial).

After the defense rested, the Commonwealth called two rebuttal witnesses. First the Commonwealth recalled the victim C.B. [and asked him to "describe anything unusual about the defendant's penis[,]" to which he answered, "He has implants. And one is in the shape of a heart."] N.T., 5/19/23, at 240. On cross-examination, defense counsel immediately asked, "The District Attorney coached you yesterday on this case; correct?" N.T., at 240.

At that time, a sidebar occurred where defense counsel alleged that the Commonwealth coached [C.B.] about [his] testimony regarding the implant and threatened prosecution if [he] did not tell the truth. N.T. at 242. The Assistant District Attorney acknowledged that she spoke to [C.B.] at the close of the previous day and advised [him] that [he] would be testifying the next day. The A.D.A. also indicated that she asked the witness about the implant but did not tell [him] what to say on the stand.

The [trial court] found the defense counsel's allegations an attempt to claim prosecutorial misconduct [in the form of witness coaching, but, "knowing the A.D.A. to be conscientious and credible," the trial court accepted both her denial of coaching and her account that she informed [C.B.] the night before that he would be called to the stand and asked only if it was true that Appellant had a penile implant. The A.D.A. related to the trial court that [C.B.] answered her question "without hesitation" that it was true, volunteered that "it's in the shape of a heart[,]" and talked more about it. N.T. at 243. The trial court] found the [A.D.A.'s] explanation credible and found no evidence of coaching and denied [Appellant's] request to call an additional witness to testify as to the alleged coaching.

At the conclusion of trial, the jury found Appellant not guilty of counts one through five but found [him] guilty of counts six through ten. The [trial court] sentenced Appellant to five to ten years on count seven and two to five years on count eight and two to five years on count ten, both to be served consecutively to count seven. Counts six and eight merged with counts seven and nine. This created an aggregate sentence of nine to twenty years.

Appellant filed post sentence motions which were denied, and [he] then filed his Notice of Appeal.

Trial Court Opinion, 1/2/24, at 1-2, 4-5, 3-4.

Appellant has filed an appellate brief[7] presenting the following questions for this Court's consideration:

A. Whether the court erred by excluding prior false claims made by the victim?

B. Whether the court erred by facilitating the coaching of the alleged victim by the prosecutor?

C. Whether the court erred by excluding the evidence of the alleged victim's mental disorders?

D. Whether the court erred by allowing the jury to observe highly prejudicial evidence about [Appellant]?

Brief of Appellant, at 7.

In Appellant's first issue, he contends the trial court erred in denying his motion *in limine* requesting admission of "prior false accusations" made by A.G.B/C.B. against other persons, including a neighbor, an uncle, a cousin, an older brother, and a grandfather. Appellant's issues implicate the admissibility of evidence and the trial court's ruling on the motion *in limine*; we review such

---

[7] Given the significant issues raised by Appellant, we note our extreme displeasure with the Commonwealth's failure to file a responsive appellee's brief, despite requesting an extension of time to do so and being granted a 30-day extension. "An appellee is required to file a brief that at minimum must contain a summary of argument and the complete argument for appellee." **Commonwealth v. Pappas**, 845 A.2d 829, 835 (Pa. Super. 2004) (internal quotation marks and citation omitted). In **Pappas**, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." **Id**. We echo that opinion and remind the Commonwealth of its obligation to file an advocate's brief in future appeals.

rulings for an abuse of discretion. ***Commonwealth v. Mangel***, 181 A.3d 1154, 1158 (Pa. Super. 2018); ***see also Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)).

> An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Harrington***, 262 A.3d 639, 646 (Pa. Super. 2021) (citation omitted); ***see also Commonwealth v. Hernandez***, 862 A.2d 647, 650 (Pa. Super. 2004) (stating a "discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion" (citation omitted)). "Where the evidentiary question involves a discretionary ruling, our scope of review is plenary ...." ***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013) (citing ***Commonwealth v. Delbridge***, 859 A.2d 1254, 1257 (Pa. 2004)).

> Admission of evidence is within the sound discretion of the trial court. ***Commonwealth v. Collins***, 585 Pa. 45, 888 A.2d 564, 577 (2005). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence ... and ... the fact is of consequence in determining the action." Pa.R.E, 401. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Thus, Rule 403 vests the trial court with authority to determine the admissibility of the evidence

with an eye towards "clear, concise, and expeditious presentation, allowing for the exclusion of evidence that is confusing, cumulative, or unfairly prejudicial." *Farese v. Robinson*, 222 A.3d 1173, 1186 (Pa. Super. 2019).

*Commonwealth v. Dewald*, 317 A.3d 1020, 1040–41 (Pa. Super. 2024).

The record shows trial counsel filed a motion *in limine* on March 17, 2023, seeking admission of evidence offered to show A.G.B./C.B.'s propensity to make false or unfounded accusations against other persons. According to the motion, the evidence would include calling witnesses regarding:

1. False accusations against a neighbor investigated by the Watsontown Police Department;

2. False accusations against an uncle in 2009 as investigated by Snyder County Children and Youth Services;

3. False accusations made [one year earlier] by the alleged victim against a cousin that she had become pregnant;

4.  And any further false accusations made by the alleged victim against others that would be uncovered prior to or during trial.

Defendant's Motion *in Limine*, at 2-3 (unpaginated)[8]. Except for the accusation apparently occurring in 2009,[9]  A.G.B./C.B. made the other

_____

[8] The defense alleged afterward that additional unfounded accusations were made against an older brother and a grandfather.

[9] In both the transcribed proceedings below and party and trial court filings in the present appeal, the earliest unfounded or false allegation attributed to A.G.B/C.B. occurred in 2009.  It is notable to this Court that in 2009 A.G.B./C.B. would have been just two or three years old—*see* N.T., 5/19/23, at 28 (indicating C.B. is 16 years old on the day of trial)—which seems a remarkably young age at which to be cited as making a "false allegation," let alone to be discredited for doing so.  Neither party nor the trial court, however, has identified an error with this date during their reviews of the record in
*(Footnote Continued Next Page)*

accusations during 2019 and 2020, within one year of the accusation against Appellant.

At the hearing on Appellant's pretrial motion, the Commonwealth argued against the admission of A.G.B./C.B.'s unfounded accusations because the first, made in 2009, was too remote in time, and the others were made not against Appellant but against other persons and, in some cases, alleged conduct unrelated to sexual abuse. N.T, 4/10/23, at 20, 25. Those that involved sexual abuse, the Commonwealth maintained, "starts to run afoul, I believe, Your Honor, of the Rape Shield Law concerning past sexual behavior, being irrelevant to the case at bar. She made an allegation at one point that she was pregnant." N.T. at 20-21.

Even if the Rape Shield Law did not apply, the Commonwealth posited, the evidence should be precluded under the Pa.R.E. 403(b) balancing test because the prejudice of admitting evidence of A.G.B./C.B's unfounded allegations of being raped and becoming pregnant by a cousin would outweigh the probative value of such evidence since the allegation did not involve Appellant. The Commonwealth applied the same argument to seek suppression of A.G.B./C.B.'s allegation that his grandmother subjected him to mental abuse, another allegation that was investigated and deemed

---

preparing appellate submissions to this Court. Nevertheless, a consensus was reached at the hearing that this allegation was inadmissible because, among other reasons, it was too remote in time to be probative to the question of A.G.B.'s/C.B.'s propensity to make such accusations.

unfounded. This evidence, the Commonwealth argued, "had no bearing on this case other than to be prejudicial against the victim." N.T. at 25.

Defense counsel pressed that evidence of A.G.B./C.B.'s "false" allegations was relevant and sufficiently probative to the central question of A.G.B./C.B.'s credibility as the main witness against Appellant, as it was "contemporary" to the present accusation at bar, having occurred within one or two years of the accusation levelled against Appellant, involved mostly accusations of sexual abuse, and Children and Youth deemed the allegations unfounded. "There was a false allegation approximately a year before she was accused [sic] where she said that she was raped by a cousin and got pregnant. . . . [It was] a year and a half ago for the Watsontown Police Department. And then the grandmother -- [A.G.B./C.B.] had made false allegations against the grandmother for abusing her. . . [c]ontemporary to making these allegations, and that was investigated by Children and Youth and they found – were found unfounded." N.T. at 21.

The trial court ruled the unfounded allegations "relevant." N.T. at 21. It raised concerns, however, that the evidence was unduly prejudicial and would violate the Rape Shield Law.

In support of the motion *in limine*, defense counsel submitted for the trial court's consideration this Court's decision in **Commonwealth v. Schley**, 136 A.3d 511 (Pa. Super. 2016), which vacated an Endangering the Welfare of Children conviction of the alleged sexual abuse victim's aunt/adoptive

mother who had failed to report the child's allegations of sexual abuse made against the uncle/adoptive father and remanded for further proceedings.

Our own independent review of **Schley**[10] reveals that it held the trial court improperly denied admission of evidence that the alleged victim had recanted three distinct, contemporaneous sexual assault allegations disproven by a surveillance video, an eyewitness account, and counseling, respectively. After determining the trial court erroneously applied the Rape Shield Law to preclude such evidence—because false allegations do not concern a complainant's past sexual conduct—the **Schley** court addressed whether the complainant's history of making false allegations was relevant under Pa.R.E. 401 and more probative than prejudicial under Pa.R.E. 403(b). It concluded:

> Here, because the complainant's testimony was the only evidence presented against Schley, it cannot be said that the trial court's error in precluding Schley from introducing the false sexual assault allegations did not contribute to the guilty verdict. **See Commonwealth v. Luster**, 71 A.3d 1029, 1046 (Pa. Super. 2013) (*en banc*) (stating that "an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict.")

**Schley**, 136 A.3d at 519.

Defense counsel in the case *sub judice* also requested at the pretrial hearing, "if the trial court reads [**Schley**] in [Appellant's] favor, [we ask permission for] an investigator to investigate these [allegations by

---

[10] Notably, the Brief for Appellant fails to discuss **Schley**. **See** *infra*.

- 10 -

A.G.B./C.B.] to get the details. We – [Appellant's] been in jail. . . . [T]hat was the reason we were requesting the investigator, Thomas Bruno." N.T. at 24. The trial court, however, denied the request, finding "those allegations were not directed against the [Appellant] and that their admission would violate Pa.C.S.A. 3104(a)."

The counseled Brief for Appellant, however, includes no reference to, let alone a discussion of, **Schley** or any other authority bearing on either the Pa.R.E. 403(b) or Section 3104(a) issues raised below. Nor does the brief address the trial court's observation that the defense presented no facts or evidence to support the defense position that the other allegations made by A.G.B./C.B. were "false" rather than merely unproven or "unfounded", as the trial court discerned the record with respect to the resolution of such allegations. Other than referencing generic, boilerplate citations regarding the confrontation clause, and otherwise baldly asserting the exclusion of the other allegation evidence denied him his right to confront his accuser, Appellant's brief fails to develop adequately his argument contesting the trial court's ruling excluding admission of the other allegations. Accordingly, we find the briefing deficiencies on this issue hamper our appellate review of this issue. **See Commonwealth v. Cole**, No. 156 EDA 2023, 2024 WL 4286246, at *7 (Pa. Super. Ct. Sept. 25, 2024) (citing **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (observing "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the

issue in any other meaningful fashion capable of review, that claim is waived.").

Appellant's argument offered to advance his second issue suffers from the same deficiency, as it contains only a generic statement that the prosecutor coached C.B. on a critical aspect of his testimony in violation of Appellant's due process rights. *See* Brief for Appellant, at 27. Appellant asserts that the trial court erred when it sustained the Commonwealth's objection to defense counsel's question during cross-examination of C.B. asking whether it was true he was able to describe a noticeable, decorative implant in Appellant's penis only because the prosecutor had coached him the night before about the implant.

Specifically, defense counsel asked C.B., "The District Attorney coached you on this case yesterday, correct?" N.T., 5/19/23, at 241. As noted *supra*, the trial court conducted a sidebar discussion of the Commonwealth's objection and found the prosecutor credibly denied the defense accusation by recounting how C.B. volunteered the specific information describing the implant in detail without any coaching by the prosecutor. Absent any meaningful challenge to the trial court's ruling denying Appellant's credibility determination in this regard, Appellant's second issue fails.

Next, Appellant challenges the trial court's exclusion of A.G.B./C.B.'s mental health records, again presenting this issue strictly in narrative form. We observe that,

> The crucial determination that a trial judge must make in ruling on the admissibility of evidence of a witness's mental instability is whether it is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him. The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his Capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime.

*Commonwealth v. Dudley*, 510 A.2d 1235, 1238 (Pa. Super. 1986).

> The trial court responds to this claim, as follows:

> Lastly, [Appellant] alleges that the [trial court] erred by refusing to allow evidence of the mental health problems of the victim, alleged to be personality disorder, multiple personalities, post traumatic stress disorder and the fact that the victim was transgender.

> The issue of introducing evidence of the victim's mental health was addressed at [Appellant's] Motion *in Limine* along with the issue regarding alleged false allegations. Once again, defense counsel offered little to no proof to the [trial court whether] the victim did in fact suffer from the mental health issues that he alleged. While it did appear that at some point the victim had been hospitalized for mental health reasons, there was no evidence of when or why. There was absolutely no evidence or offer of proof that even if the victim had mental health issues that they would affect her ability to recall what happened or to testify truthfully.

Trial Court Opinion at 7.

Appellant directs us to the notes of testimony, pages 13 to 16, of the April 10, 2023, hearing on his motion *in limine*, where he contends the trial court "excluded the alleged victim's self-harming and acting out behaviors, mental health commitment issues and multiple personality disorders." Brief of Appellant, at 29. Our review of those pages, as well as of the entire notes of testimony of the hearing, reveals they belie Appellant's implication that he

- 13 -

objected to the trial court's evidentiary ruling in this regard and show, instead, that he argued this was a case about the physical evidence and should be restricted as such.

The record reveals that the defense sought to exclude expert testimony on self-harming and C.B.'s mental health commitments in opposition to the Commonwealth's intention to present the theory that such history stemmed from Appellant's abuse of the child. N.T. at 13. Rather than admit the mental health issues, the defense argued, the focus should be on the medical doctor's physical examination of C.B., which revealed no vaginal physical trauma. N.T. 13-16. Specifically, the defense argued that introduction of mental health issues

> clouds the issue that the jury has to decide in terms of whether this [Appellant's alleged sexual abuse of C.B.] did happen. . . . Your Honor, it [mental health issues and C.B.'s gender identity] confuses a very important issue as to whether there's penetration on this child. It's a physical case. It should be simple to present the physical evidence. And to get into all of these other issues, you know, we'd almost have to hire an expert to refute all of the opinions that are coming from all these other witnesses, because that's all they can express. They weren't – they don't know if the kid's telling the truth or not. . . . They're just repeating what – the version of the kid, who has multiple personality disorder, says, and that Children and Youth – what she said on that occasion.

N.T. at 16, 19.

Viewed against this record, Appellant's third issue affords him no relief.

Finally, the Brief of Appellant challenges the testimonies of Christina Showers, Stacy Brightbill, and Dr. Pat Bruno to offer what he maintains was inadmissible opinions without personal knowledge in violation of the

- 14 -

Pennsylvania Rules of Evidence. Appellant did not include this issue in his Rule 1925(b) statement, which he filed contemporaneously with his direct appeal. Consequently, the trial court opinion does not address this issue.

It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. **See Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306, 309 (1998). This is so because a Rule 1925(b) statement is a crucial component of the appellate process that enables the trial court to identify the alleged errors to be raised on appeal with sufficient specificity to allow it to file a responsive Rule 1925(a) opinion. **See** Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge").

This waiver principle applies not only when a trial court orders an appellant to file a Rule 1925(b) statement but also when an appellant files a concise statement contemporaneously with the direct appeal. **Commonwealth v. Yoder**, No. 794 MDA 2023, 2024 WL 3273439 at *2, fn 1 (non-precedential decision) (Pa. Super. filed July 2, 2024) (citing **Commonwealth v. Snyder**, 870 A.2d 336, 341 (Pa. Super. 2005) (finding appellant waived issues not raised in his Rule 1925(b) statement, even though he filed the statement contemporaneously with his notice of appeal before the court could order it).

Here, because Appellant's failure to raise this issue in his Rule 1925(b) statement has prevented the trial court from addressing it, we find his final issue is waived.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/05/2024