J-S30011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MICHAEL CRONIN, JR. | : | |
| | : | |
| Appellant | : | No. 450 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 19, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004458-2019.

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED OCTOBER 7, 2025**

Appellant, David Michael Cronin, Jr., appeals from the judgment of sentence entered October 19, 2023, as made final by the denial of his post-sentence motion on October 26, 2023. We affirm.

On August 21, 2019, Appellant was charged *via* criminal information with involuntary deviate sexual intercourse ("IDSI") with a person less than 16-years-old, aggravated indecent assault – complainant less than 16-years-old, corruption of minors, dissemination of obscene or sexually explicit materials, indecent assault – person less than 13-years-old, incest, and endangering the welfare of a child. The aforementioned charges related to Appellant's sexual abuse of his adoptive daughter (the "Victim") which

_____

[*] Retired Senior Judge assigned to the Superior Court.

started when the Victim was approximately 12-years-old and continued through the Victim's adulthood.

Before trial, the Commonwealth received a report from Appellant's counsel which referenced a Comprehensive Psychiatric Evaluation conducted on the Victim by a psychologist, Tushar Sarker, M.D., in December 2019, wherein Dr. Sarker diagnosed the Victim with bipolar disorder, borderline personality disorder and post-traumatic stress disorder ("PTSD"). Thus, on April 14, 2021, the Commonwealth filed a motion *in limine* seeking to bar the admission of Dr. Sarker's Comprehensive Psychiatric Evaluation. In this same motion, the Commonwealth sought to exclude or otherwise limit the testimony of Appellant's expert in forensic psychology, Dr. Thomas Haworth. The Commonwealth claimed that Dr. Haworth's testimony was inadmissible because he inappropriately "challenge[d] the [Victim's] credibility." Commonwealth's Motion *In Limine*, 4/14/21, at *4-*5 (unpaginated). The trial court heard argument on the Commonwealth's motion on June 2, 2021. On September 29, 2021, a hearing was held during which Dr. Haworth testified with respect to his expert opinions in the matter.

Ultimately, on May 22, 2023, the trial court entered an order which, in relevant part, precluded Appellant from presenting Dr. Haworth's expert report or testimony at trial.[1] More specifically, the trial court prohibited Appellant from introducing Dr. Haworth's expert opinions at trial because it

_____

[1] The trial court's order was dated January 19, 2023, but not filed until May 22, 2023.

- 2 -

determined that Appellant's "underlying purpose and intent of producing said evidence and testimony [was] to challenge the [Victim's] credibility" which, in the court's view, was "a matter for cross-examination" and within the "province of the jury." Trial Court Opinion, 5/22/23, at 2-3.[2] The trial court, however, noted that the parties "stipulated to the fact that the [V]ictim has been diagnosed with bipolar disorder and borderline personality disorder" and that such a stipulation would be submitted to the jury at trial. *Id.* at 1 (unnecessary capitalization omitted). Thus, the trial court permitted Appellant to cross-examine the Victim on whether, "at the time of the incident(s) and/or during trial, she was/is under the influence of any medications or suffering from an illness which may impact her ability to perceive, remember and recall events." *Id.* The trial court further permitted Appellant to inquire, at trial, "whether [the Victim's] diagnosis cause certain symptoms[] and whether they impacted her ability to perceive, remember and recall events." *Id.* The trial court restricted Appellant from inquiring "beyond the resulting yes or no response." *Id.*

Appellant's jury trial commenced on May 22, 2023. At trial, the Victim testified that she was diagnosed with bipolar disorder, borderline personality disorder, and PSTD in 2019. *See* N.T. Trial, 5/23/23, at 118. While the Victim denied that, because of the aforementioned conditions, she suffered from hallucinations, hearing voices, manic episodes or delusions before or during

_____

[2] The trial court's opinion was dated January 19, 2023, but not filed until May 22, 2023.

2019, Appellant's counsel presented evidence to the contrary. ***See id.*** at 178-184 (presenting e-mail correspondence between October 17, 2018 and February 7, 2019 wherein the Victim admitted to hearing voices, experiencing paranoia, suffering from panic attacks, auditory hallucinations and vivid nightmares); ***see also id.*** at 185 (presenting a writing by the Victim wherein she stated she experienced a manic episode and other psychotic symptoms). After the Victim's testimony, the following stipulation was read to the jury:

> In December of 2019, [the Victim] was diagnosed with bipolar [one] disorder, borderline personality disorder, and [PTSD] by a medical doctor who specializes in psychiatry with bipolar [one] disorder. The definition and some of the characteristics of bipolar [one] disorder, borderline personality disorder, and [PTSD] are the following.
>
> Bipolar [one] disorder. Individuals with this condition are characterized by distinct periods of abnormality and persistently elevated, expansive, or irritable mood, and increased activity or energy last[ing] more than one week, present most of the day, nearly every day. At times[,] bipolar [one] disorder is also marked by psychotic episodes. That is breaks of reality, experiencing hallucinations or delusions. The Diagnostic and Statical Manual Fifth Edition, DSM-5 describes the experience of bipolar one disorder as recurring mood episodes, manic depressive hypomanic. But the occurrence of at least one manic episode is necessary for a diagnosis to be made [d]uring the mood disturbance and increased energy or activity. Three or more of the following symptoms are present to a substantial degree and represent a noticeable change from the individual's [] usual behavior, inflated self-esteem or grandiosity, decreased need for sleep, more talkative than usual, or pressure to keep talking, racing thoughts or flights of ideas, distractibility, increased goal-oriented activity or psychomotor agitation, excess, pleasurable, or risky activity. This marked impairment is not due to a substance or medical condition.
>
> Borderline personality disorder. Borderline personality disorder is a disorder of personality. This condition usually becomes

recognizable during adolescence or young adulthood. Diagnostic criteria for this disorder is a pervasive pattern of instability of interpersonal relationships, self-image, and affects and marked impulsivity. The Diagnostic and Statistical Manual Fifth Edition, DSM-5 provides the following diagnostic criteria. Frantic efforts to avoid real or imagined abandonment. A pattern of unstable and intense interpersonal relationships characterized by alternating between extremes of idealization and devaluation. Identity disturbance marked and persistently unstable self-image or sense of self. Impulsivity in at least two areas that are potentially self-damaging, recurrent suicidal behavior, gestures or threats or self-mutilating behavior effective instability due to a marked reactivity or mood. Shifting and unpredictable moods, chronic feelings of emptiness, inappropriate intense anger or difficult controlling anger, *e.g.*, frequent displays of anger, recurrent arguments of fights. Transient, stress-related, paranoid ideation, or severe dissociative symptoms. Individuals with borderline personality disorder may have a pattern of undermining themselves at the moment a goal is about to be realized. Some individuals develop psychotic-like symptoms during times of stress. Individuals with this disorder may feel more secure with transitional objects *i.e.*, a pet than in interpersonal relationships.

[PTSD.] PTSD[] is the development of characteristic symptoms following exposure to one or more traumatic events. PTSD can occur at any age, beginning after the first year of life, and symptoms can begin shortly after the trauma or with a delay of months or years before criteria for diagnosis are met. The Diagnostic and Statistical Manual Fifth Edition DSM-5 provides the following diagnostic criteria. Exposure to actual or threatened death, serious injury or sexual violence. Persistent avoidance of stimuli associated with the traumatic event. The presence of one or more symptom associated with the traumatic events, including, recurrent, involuntary, and intrusive, distressing memories of the traumatic event, recurrent distressing dreams related to a traumatic event, dissociative reactions, *e.g.*, flashbacks, intense or prolonged psychological distress or psychological reactions at exposure to internal or external cues resembling an aspect of the traumatic event. Next, negative alterations in cognitions and mood associated with the traumatic event, including at least two of the following, inability to remember an important aspect of the

traumatic event, persistent and exaggerated negative beliefs or expectations about one's self, other or the world. Persistent distorted cognitions about the cause or consequences of the traumatic event that led the individual to blame themselves or others. Persistent negative emotional state. Markedly diminished interest or participation in significant activities. Feelings of detachment or estrangement from others. Persistent inability to experience positive emotions. Next marked alterations and arousal and reactivity associated with the traumatic events, including at least two of the following. Irritable behavior, and angry outbursts. Reckless or self-destructive behavior, hypervigilance, exaggerated startle response, problems with concentration, sleep disturbance. The duration of the disturbance must last longer than one month, caused clinically significant distress or impairment in social, occupational, or other important areas of functioning and is not attributable to the effects of a substance or a medical condition.

N.T. Trial, 5/24/23, at 179-184 (paragraph breaks inserted) (emphasis added) (unnecessary capitalization omitted).

On May 26, 2023, the jury returned a verdict, finding Appellant guilty of IDSI – person less than 16-years-old and incest.[3] On October 19, 2023, the trial court sentenced Appellant to serve an aggregate term of six to ten years' incarceration, followed by one-year of reentry supervision. This timely appeal followed.

Appellant raises the following issues for our consideration.

1. Did the [trial] court err in granting the Commonwealth's motion *in limine* to preclude the testimony of the defense expert concerning the mental health diagnosis of the [V]ictim, how the characteristics of those diagnoses as evidenced by her writings and behavior affected her thinking, the accuracy of her perceptions of experiences,

_____

[3] 18 Pa.C.S.A. §§ 3123(a)(7) and 4302, respectively.

ability to perceive reality, and differentiate reality from fantasy?

2. Did the [trial] court err in providing supplemental instructions to the jury after it seemed that they were deadlocked on some of the charges and did the [trial] court's supplemental instructions coerce a verdict?

Appellant's Brief at 4 (unnecessary capitalization omitted).

In his first issue, Appellant challenges the trial court's order granting the Commonwealth's motion *in limine* which sought, in relevant part, to exclude Dr. Haworth's expert testimony. Appellant contends that, in so doing, the trial court prevented him from presenting evidence of the Victim's mental disorder, which, in Appellant's view, was not only admissible, but it was also vital for the jury to be able to assess the Victim's credibility. Upon review, we conclude that Appellant's claim lacks merit.

The scope and standard of review and the general principles governing our examination of such challenges are well settled.

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.***, 933 A.2d 664 (Pa. Super. 2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the [factfinder]." ***Commonwealth v. Reese***, 31 A.3d 708, 715 (Pa. Super. 2011) (*en banc*). A trial court's decision to grant or deny a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." ***Id.***

***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa. Super. 2014) (parallel citations omitted), *appeal denied*, 123 A.3d 331 (Pa. 2014), *cert. denied*, 577 U.S. 1008 (2015). In this same vein, "[d]ecisions regarding admission of

expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1140 (Pa. Super. 2009) (citation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Witmayer***, 144 A.3d 939, 949 (Pa. Super. 2016) (citation omitted).

Rule 702 of the Pennsylvania Rules of Evidence governs the admissibility of expert testimony. It states:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

As Rule 702 explains, expert testimony is only proper "where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror." ***Commonwealth v. Seese***, 517 A.2d 920, 921 (Pa. 1986). "The question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as

observations of the demeanor and character of the witness." ***Id.*** at 922. Hence, "long-standing Pennsylvania precedent" holds that "determining witness credibility is exclusively the function of jurors" and, as such, "expert witnesses are specifically prohibited from invading this province." ***Commonwealth v. Maconeghy***, 171 A.3d 707, 712 (Pa. 2017); ***see Commonwealth v. Pugh***, 101 A.3d 820, 823 (Pa. 2014) (citing cases which exemplify the "long-standing policy of protecting the jury's prerogative to determine credibility from the undue influence that accompanies expert testimony on the subject of credibility of witnesses.").

In his proffered expert report and during the September 29, 2021 hearing, Dr. Haworth reviewed of each the Victim's relevant diagnosis and explained their respective symptoms. Then, Dr. Haworth discussed evidence pertaining to the Victim specifically, which included e-mail correspondence evidencing a genuine belief on the part of the Victim that she was engaged in a relationship with Paul McCartney (the member of the Beatles), internet activity wherein the Victim discusses various symptoms including paranoia, hearing voices, and hallucinations, as well as communications with a professor wherein the Victim evidenced self-aggrandizing behavior. ***See*** N.T. Hearing, 9/29/21, at 42 (the Victim indicating that "she was recruited for *American Idol*" and "a headliner in the Hedgerow Theater" even though "there was no evidence of that" and it was "not true"); ***see also id.*** at 36-39 (reviewing e-mails between the Victim and an individual posing as Paul McCartney); ***id.*** at

40 (reviewing writings the Victim posted on an internet forum called The Mighty). Based upon the foregoing, Dr. Haworth offered the following opinion:

> [The Victim] has repeatedly demonstrated a tenuous appreciation of reality, significant breaks in her perception of reality, marked by idiosyncratic thinking, delusion, and hallucination, all of which interferes with her ability to accurately perceive reality.

*Id.* at 44; *see also* Commonwealth's Motion in Limine, 4/12/21, at Appendix A (Dr. Haworth opining that the Victim "could be purposely stating mistruths, falsifying information to gain some advantage, attention, recognition, or otherwise to assuage the effects of life which suffered damages from the very beginning").

In our view, the trial court correctly determined that Dr. Haworth's proffered expert testimony directly called into question the Victim's credibility. At bottom, Dr. Haworth's opined that, considering the symptoms the Victim experienced pursuant to her various diagnoses, the Victim could not "accurately perceive reality." N.T. Hearing, 9/29/21, at 44. Hence, if the trial court allowed Appellant to present Dr. Haworth's expert testimony, it "would [have] encourage[d] jurors to shift their focus from determining the [Victim's] credibility . . . and [impermissibly] allow[] them instead to defer to the so-called 'expert' assessment of the [Victim's] truthfulness." *Seese*, 517 A.2d at 922. This result is impermissible under our precedent as the jury, alone, is the arbiter of a witness's credibility. Thus, we conclude that the trial court did not abuse its discretion by precluding Dr. Haworth's expert testimony.

We further conclude that, in contrast to Appellant's claims, the trial court allowed him to present evidence of the Victim's mental disorders and their effect on her credibility, albeit not through expert testimony. *See Commonwealth v. Dudley*, 510 A.2d 1235, 1237 (Pa. Super. 1986) (explaining that "'treatment in a mental hospital within seven months of the date of trial is near enough to raise a question for the jury as to the effect of the mental disorder on [a witness's] credibility.'") (citation omitted); *see also Commonwealth v. Davido*, 106 A.3d 611, 637 (Pa. 2014) ("When a witness suffers from a mental disability relevant to his or her ability to accurately observe, recall or report events, the jury must be informed of the disability in order to assist it in properly assessing the weight and credibility of the witness's testimony."). In this instance, the trial court correctly allowed the jury, based upon "traditional methods," to assess the Victim's credibility, namely, by way of stipulation and cross-examination. *Seese*, 517 A.2d at 922. In so doing, the trial court balanced the competing interests of the parties and adhered to the consistent precedent promulgated throughout this Commonwealth. Thus, no relief is due.

In his second issue, Appellant challenges the trial court's supplemental instructions issued to the jury during its deliberations. Appellant contends that the trial court's comments were inappropriate and, as such, "the jury's verdict was effectively coerced." Appellant's Brief at 49. In his brief, however, Appellant admits that counsel failed to raise a contemporaneous objection to the trial court's supplemental instructions. *See id.* at 48 ("The [trial] court

properly notes the lack of an objection by defense counsel to [its] supplemental instructions and asserts that any issues regarding these comments have been waived."). It is well-settled that the failure to lodge a specific objection to a court's jury instructions at trial waives any claim of error on appeal. *See* Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."); *see also Commonwealth v. Edmondson*, 718 A.2d 751, 753 (Pa. 1998) ("[E]ven though the jury instruction in question may have been coercive . . . [the] appellee failed to object to the trial court's supplemental instructions when it was given. … [As such, the claim of error] has not been properly preserved on appeal."). Because Appellant failed to object after the trial court issued its supplemental instructions, his claim of error is waived on appeal. Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/7/2025